IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICK WILLIAMS, et al., | ) |
| On Behalf of Themselves and | ) CASE NO.  1:16-cv-878-WTL-MJD |
| All Others Similarly Situated, | ) |
| Plaintiffs, | ) |
| v. | ) |
| ANGIE'S LIST, INC., | ) |
| Defendant. | ) |

## DEFENDANT ANGIE'S LIST, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

## I.    INTRODUCTION

Plaintiffs seek FLSA conditional certification of a class of hundreds, potentially more than a thousand, current and former "sales representatives," spread out over multiple departments, facilities, and managers, who worked for Defendant Angie's List, Inc., ("Defendant" or "Angie's List").  Plaintiffs allege that Defendant's managers maintained an unlawful unwritten policy prohibiting "sales representatives" from recording overtime hours or being paid for overtime work.  Plaintiffs base their claim on self-serving declarations from three disgruntled former employees and vague deposition testimony from an unrelated lawsuit.  At most, Plaintiffs have provided evidence alleging that a few rogue supervisors "encouraged" three "sales representatives" to not record all of their time worked.  Plaintiffs fall short of establishing an illegal policy that binds them and thousands of "sales representatives" as a similarly-situated aggrieved class.

The actual Angie's List timekeeping policies, explained below and attached to this Opposition, demonstrate that Angie's List prohibits off-the-clock work, requires non-exempt employees to accurately record all of their work time, has systems that automatically track employee time in its timekeeping system, and provides non-exempt employees with corrective

1

measures when they believe their time or pay is inaccurate.  In fact, the Named Plaintiffs' own time records demonstrate that there was no uniform policy prohibiting the recording of overtime hours because the majority of the Named Plaintiffs repeatedly reported working overtime and were paid for that time.  Moreover, 24 putative class members have testified in declarations attached to this Opposition that they were never instructed to not record overtime hours and that they always reported overtime hours worked and were paid for that time.  Plaintiffs have not established that there exists a class of similarly situated employees all of whom were subject to the same unwritten policy prohibiting them from recording their overtime hours.  As such, Plaintiffs' Motion for Conditional Certification of a collective action class should be denied.

## II.   STATEMENT OF FACTS

### A.   Angie's List and Its Sales Originations Department, Client Success Department, and E-Commerce Department.

Angie's List operates a national local services consumer review service and marketplace where consumers can research, shop for, and purchase local services for critical needs, such as home, health, and automotive services.  (Declaration of Craig Boas, "Boas Dec.," ¶ 3, attached as Exhibit 1.) This service also allows consumers to rate and review the service providers of these services across hundreds of markets in the United States. (*Id.*)

There are multiple departments at Angie's List, including Sales Originations, Client Success (formerly Account Management), E-Commerce and others.  (*Id.* ¶ 4.) Craig Boas is one of the current Directors of Sales Originations, and sales managers report to him and two other directors. (*Id.* ¶ 2.) The Sales Origination Department, Client Success Department and the E-Commerce Department are different departments at Angie's List, with different management and different duties. (*Id.* ¶¶ 4-5; Declaration of Phil Harkenrider, "Harkenrider Dec.," ¶ 4, attached as Exhibit 2.) E-Commerce is located in an entirely different building. (*Id.*) The Senior Director of

the Client Success Department is James Ledo and the Director of the E-Commerce Department is Phil Harkenrider. (Boas Dec. ¶ 4.)

Each department services a different function of the business, with different job positions, duties, management, directors, compensation structure, and reporting structure. (*Id.* ¶¶ 4-5; Harkenrider Dec. ¶ 4.) For example, there are multiple job positions in the Sales Originations Department and job positions have changed dramatically over the last several years. (Boas Dec. ¶ 6.) Angie's List does not have a "sales representative" position; rather, in 2013, there was a job position called Advertising Sales Consultant (otherwise known as Advertising Sales Representative). (*Id.*) As of October 2015, that position no longer existed. (*Id.*) In October 2015, there were several new positions created in Sales Originations, including Discovery Representative, Eligibility Representative, and Senior Solutions Consultant. (*Id.*) Each of these positions have different duties and responsibilities. (*Id.*)

Similarly, many of the positions in Plaintiffs' putative class are not similarly situated and have little relation to each other.  For example, Plaintiff James Bryan Grant's position of Advertising Sales Training Specialist was an exempt position in the Sales Originations Department. (*Id.* ¶ 12.) Plaintiff Padilla's Account Service Representative position was an exempt position in the Client Success Department. (*Id.* ¶ 8.) Plaintiffs Daniel Arnold and Stephen Goens were Big Deal Representatives in the now defunct Big Deal Department and never worked in the Sales Originations Department.  (*Id.* ¶ 10.) Plaintiff Ryan Galbraith was a Big Deal Representative and had not worked in the Sales Originations Department since June of 2013. (*Id.* ¶ 10.) Plaintiff Andrew Barton held a position of E-Commerce Sales Representative and was not part of the Sales Originations Department until approximately October of 2014. (*Id.* ¶ 11.)

**B.      Angie's List's Uniform Policy and Training Requiring the Accurate Reporting of Hours Worked and Overtime.**

Angie's List has uniform policies and training requiring the accurate reporting of hours worked and overtime, and all non-exempt employees at Angie's List are paid overtime rates for all hours worked and recorded over 40 in a workweek. (Declaration of Michelle Hochgesang, "Hochgesang Dec.," ¶ 4, attached as Exhibit 3; Declaration of Jeff Barnard, "Barnard Dec.," ¶¶ 4-6, attached as Exhibit 4.)

It is Angie's List's explicit policy that all employees are required to report all of their hours worked, including hours worked over 40 in a workweek. (Declaration of Kristi Johnson, "Johnson Dec," ¶ 5, attached as Exhibit 5; Barnard Dec. ¶¶ 4-6; Ex. A to Barnard Dec.) Angie's List affirmatively states in its written policies in its employee handbook that all non-exempt employees are required to record their time worked accurately, that non-exempt employees are entitled to overtime pay and Angie's List prohibits falsifying a time card, understating or overstating hours, or working "off the clock." (Boas Dec. ¶ 13; Barnard Dec. ¶¶ 4-6; Ex. A to Barnard Dec.) The handbook also provides employees with corrective measures by requiring them to notify their supervisor or Payroll immediately if there is an error on their paycheck. (*Id.*)

Specifically, Section 2.4 of the Handbook states that non-exempt employees are entitled to and paid overtime and states in pertinent part:

> If you're classified as Non-Exempt (Hourly), then you are entitled to overtime pay and subject to specific provisions of federal and state wage and hour laws.

> If you are classified as Non-Exempt (Salaried), then you are entitled to overtime pay and subject to specific provisions of federal and state wage and hour laws.

(Barnard Dec. ¶ 5; Ex. A to Barnard Dec.) Also, Section 2.7 of the Handbook details the time recording process and provides in pertinent part:

> If you are a non-exempt employee, you must accurately record time worked for payroll purposes.  All employees are required to record their own time at the

4

beginning and ending of each day of the pay week, including before and after lunch and any other time out of the building for reasons other than company business.

All time worked MUST be recorded via your department's standard format and approved by your supervisor each week. Time worked must be submitted to Payroll no later than 10:00 am on the Monday following the end of the pay period.

Filling out another employee's time sheet, allowing another employee to fill your time sheet, falsifying your timesheet, overstating or understating hours, or altering any time sheet in any way, will be grounds for discipline, up to and including termination.

If you find an error on your paycheck, notify your supervisor or Payroll immediately. Legitimate errors will be corrected. If you have been issued a paper check and it is misplaced, notify Payroll immediately so that payment may be stopped at the bank and another check can be issued.

(Barnard Dec. ¶ 4; Ex. A to Barnard Dec.)

Section 1.4 of the Handbook further details consequences for improper timekeeping, including providing that certain actions, including the following, could result in discipline up to and including discharge: "Falsifying company records . . . forms or data including time records . . ., Falsifying a time card, and Working 'off the clock.'" (Barnard Dec. ¶ 6; Ex. A to Barnard Dec.)

These policies are communicated to all employees. (Declaration of Ed Sherman, "Sherman Dec.," ¶ 4, attached as Exhibit 6; Boas Dec. ¶ 14; Barnard Dec. ¶¶ 8-9; Declarations of Putative Class Members, "Putative Class Members' Declarations," attached as Exhibit 7.) The July 2014 Handbook was sent to all managers prior to the official roll-out to all employees, along with information on certain policies in the Handbook. (Barnard Dec. ¶ 7.) The managers were also reminded that many policies and procedures had not changed, including the policy on recording time. (*Id.*) Managers were also given a refresher on the time recording policy, including the direction that all non-exempt employees were required to accurately record time

5

worked and that certain behaviors were unacceptable, including understating hours. (*Id.*) Managers were also invited to various Open House meetings to discuss the Handbook with HR. (*Id.*) The Handbook was rolled out to all employees on July 17, 2014 (*Id.* ¶ 8.) The employees were asked to read the Handbook and to sign an Acknowledgment stating in part, "I understand that it is my responsibility to familiarize myself with its contents, and to ask questions about anything I do not understand." (*Id.*) The Handbook was maintained electronically and accessible by all employees. (*Id.*) After the July 2014 roll-out of the Handbook, any new employees were also sent a link to the Handbook, and asked to review the Handbook and to sign the Acknowledgment. (*Id.* ¶ 9.)

In addition to the uniform policies, Angie's List employs a timekeeping program. (Johnson Dec. ¶ 4.) The timekeeping program used during the time period prior to May of 2016 was called TimeTracker. (*Id.*) TimeTracker worked with Angie's List's primary sales software, SalesForce, to automatically enter an employee's start time in TimeTracker when that employee logged in to Salesforce.  (*Id*. ¶ 6.)  The program would log an employee's end time when they clocked out for the day. (*Id.*) Time could be manually adjusted and non-exempt employees were trained to review this time and to revise the time if it was inaccurate. (*Id.*) During the training, employees learned how to access, adjust, and submit their time through the time-keeping program, so they could ensure that their submitted time was accurate. (*Id.*) Employees are instructed to accurately record time in the TimeTracker system and they individually submit their recorded hours worked on a weekly basis. (Boas Dec. ¶ 14; Johnson Dec. ¶ 7.) Even after they have reviewed and submitted their weekly time, if employees feel their time records or pay is inaccurate for any reason, they are able to talk to their supervisors or Payroll about a time correction. (Barnard Dec. ¶¶ 3-4; Putative Class Members' Declarations.)

6

**C.** **Angie's List Has Not Instructed Any Non-Exempt Employee to Not Record or to Under-Record Time They Actually Worked in Excess of 40 Hours per Workweek.**

As seen above, Angie's List written policies require all employees to record their time worked accurately. (Barnard Dec. ¶¶ 3-6; Boas Dec. ¶ 13; Johnson Dec ¶ 7; Sherman Dec. ¶ 3.) Angie's List has no policy or instruction that is given to its managers to prohibit employees from recording hours worked.  (Barnard Dec. ¶ 11; Boas Dec. ¶¶ 13, 15-16, Sherman Dec. ¶¶ 3, 5-6, 8; Putative Class Members' Declarations.)

In fact, the declarations attached to this Opposition reveal that 51 directors and managers have never made such an instruction. (Boas Dec. ¶¶ 15-16; Harkenrider Dec. ¶¶ 9-10; Sherman Dec. ¶¶ 5-6; Putative Class Members' Declarations.) For example, Craig Boas has not instructed any non-exempt employee to not record or under-record time they actually worked in excess of 40 hours per workweek. (Boas Dec. ¶ 15.) Boas also has not instructed any manager to prohibit non-exempt employees from recording time they had actually worked over 40 hours in a workweek. (*Id.* ¶ 16.) Ed Sherman is the Senior Director of Review Acquisitions in the Sales Operations Department and previously held the position of Senior Director of Sales Originations in the Sales Originations Department.  (Sherman Dec. ¶ 2.) Sherman, similarly, has not instructed any non-exempt employee to not record or under-record time they actually worked in excess of 40 hours per workweek. (*Id.* ¶ 5.) Further, Sherman has not instructed any manager, including Cody Boillot, to prohibit non-exempt sales employees from recording all of their hours of work, including hours worked over 40 in a workweek.  (*Id.* ¶ 6.) Boillot did not complain to Sherman about any alleged failure to pay overtime. (*Id.* ¶ 7.) Further, there was never an instruction from Sherman to a manager to identify employees who were leaving earlier than others. (*Id.* ¶ 8.)

Similarly, Phil Harkenrider, Director of E-Commerce, has not instructed any non-exempt employee to not record or under-record time they actually worked in excess of 40 hours per workweek. (Harkenrider Dec. ¶ 9.) Harkenrider also has not instructed any E-Commerce Manager to prohibit non-exempt employees from recording all of the hours they worked, including hours worked over 40 in a workweek.  (*Id.* ¶ 10.)

### D. Angie's List's Employees Understand They Are Required To Report All Hours Worked, Including Overtime Hours.

Defendant's policies and training that require the accurate reporting of time were well understood by Defendant's employees. Twenty-four putative class members testify in the Declarations attached as Exhibit 7 that they have never been instructed by an Angie's List manager or supervisor to not record their time accurately or to not record hours worked over 40 in a workweek. (Putative Class Members' Declarations.) These employees have been supervised by a minimum of forty-nine managers. (*Id.*) These employees know that it is Defendant's policy that employees are "required to record [their] working hours accurately" and these employees "always recorded [their] working hours in the time system, Time Tracker, accurately." (Putative Class Members' Declarations, see specifically Crumpton Dec. ¶ 7, who reported to Cody Boillot).  They further state that they are "paid for all hours that [they] work and record in TimeTracker, including overtime rates of 1.5 times [their] regular rate for hours worked over 40 in a workweek." (*Id.* at ¶ 8.) The employees also state that they "understand that if [they] feel like [their] time records or pay is inaccurate for any reason, [they] can talk to [their] supervisor or Payroll about a time correction." (*Id.* at ¶ 14.)

### E. The Named Plaintiffs Who Were Non-Exempt Recorded Overtime and Were Paid for that Time.

Angie's List's policies requiring non-exempt employees to record all hours worked was especially clear to the Named Plaintiffs.  As demonstrated in the attached payroll and time

records, the non-exempt Named Plaintiffs recorded all hours worked and were not hesitant to record their overtime hours. (Ex. A to Hochgesang Dec.; Declaration of Elizabeth Northern, "Northern Dec.," ¶ 4, attached as Exhibit 8, and Ex. A to Northern Dec.)[1]  The non-exempt Named Plaintiffs individually entered their time weekly into Angie's List's timekeeping system. (Boas Dec. ¶ 14; Johnson Dec. ¶¶ 5-6; Hochgesang Dec. ¶ 4; Northern Dec. ¶ 3.) Most of the non-exempt Named Plaintiffs recorded working more than 40 hours in a workweek on numerous occasions. (Ex. A to Hochgesang Dec.; Ex. A to Northern Dec.) The non-exempt Named Plaintiffs were paid an overtime rate for these hours. (Hochgesang Dec. ¶¶ 4-5.) The following chart summarizes the overtime compensation received by the listed Named Plaintiffs in 2015:[2]

| Name | 2015 Total Overtime |
| --- | --- |
| Arnold, Danny | $0 |
| Avila, Robert | $9,182.36 |
| Barton, Andrew | $354.84 |
| Browning, Mike | $3,591.06 |
| Burgess, Erin | $14,893.96 |
| Chambers, James | $0 |
| Davis, Christine | $1,750.57 |
| Gaer, Jeffrey | $3,674.76 |
| Galbraith, Ryan | $0 |
| Glover, Justin | $0 |
| Goens, Todd | $0 |
| Grant, James Bryan | $0 |
| Hines, Bill | $0 |
| Jackson, Nick | $7,759.91 |
| Jenkins, James | $6,299.99 |
| Jenkins, Tina | $1,850.54 |
| Keefer, Kelly | $1,368.02 |
| Leeman, Jennifer | $1,026.50 |
| Maxwell, Sam | $4,899.15 |
| Mayhew, Zach | $0 |

---

[1] Defendant has attached pay history summaries for the Named Plaintiffs for a representative time period, specifically for the time period of January 2015 through April 2016.  Defendant has also attached a TimeTracker spreadsheet for the Named Plaintiffs, as applicable, for the calendar year 2015.  If the Court wishes to review additional pay history summaries or time records, Defendant is happy to produce those records.
[2] The following Named Plaintiffs were not employed in the year 2015: Derek Hollingsworth, Adam Gillam, Lisa Hensley, and Bob Thomas. (Hochgesang Dec. ¶ 6.) In addition, pay history records indicate that fourteen were terminated or resigned during the year 2015. (Ex. A to Hochgesang Dec.)

| Morris, Dustin | $13,106.53 |
|---|---|
| Myers, Devin | $0 |
| Nowlin, Greg | $525.09 |
| Padilla, Troy | $0 |
| Pierce, Jim | $123.00 |
| Rynard, Matt | $240.86 |
| Suzano, Andre | $6,969.55 |
| Syrus, Zach | $28.99 |
| Thacker, Dan | $7,809.34 |
| Town, Andy | $7,562.21 |
| White, Desmond | $1,985.87 |
| Williams, Chris | $2,823.74 |
| Williams, Nick | $38,151.12 |
| Wright, Adam | $5,041.07 |
| Yungwirth, Hagen | $63.58 |

(Ex. A to Hochgesang Dec.)

As detailed in this chart and the payroll records, the majority of the Named Plaintiffs worked and recorded overtime hours in 2015 and were paid for that overtime. (Ex. A to Hochgesang Dec.; Ex. A to Northern Dec.) For example, lead Plaintiff Nick Williams received $38,151.12 in overtime payments in 2015. (*Id.*) In total, the non-exempt Named Plaintiffs earned a total of $141,082.60 in overtime payments in one year alone. (Ex. A to Hochgesang Dec.) Accordingly, the non-exempt Named Plaintiffs were clearly not under any instruction not to record their overtime hours; rather they regularly recorded, and were paid for, their overtime hours worked.

**F.      Some Members of the Putative Class Were Exempt Under the Fair Labor Standards Act, and/or Performed Different Job Duties under Different Managers in Different Departments.**

The Named Plaintiffs do not share the same exempt status, department, or managers. In fact, some of the Named Plaintiffs held exempt positions — both within and outside the Sales Originations Department. Named Plaintiff Troy Padilla was not a member of the Sales Originations Department, but rather held an **exempt** Account Services Representative position in

10

the separate Client Success (formerly Account Management) Department. (Boas Dec. ¶ 8.) There are no positions of "Account Manager" or "Account Executive" in the Sales Originations Department. (Boas Dec. ¶ 7.) Named Plaintiff James Bryan Grant held an **exempt** Advertising Sales Training Specialist position in the Sales Originations Department from approximately February 2014 through May 2015. (*Id.* ¶ 12.)

In addition, Named Plaintiffs Daniel Arnold and Stephen Goens were Big Deal Representatives in the now defunct Big Deal Department and never worked in Sales Originations. (Boas Dec. ¶ 10.) Named Plaintiff Ryan Galbraith was a Big Deal Representative in the separate E-Commerce Department, and had not worked in the Sales Originations Department since June 2013. (*Id.* ¶ 10; Harkenrider Dec. ¶ 5.) There are no positions of "Big Deal Representative/Consultant" in the Sales Originations Department. (Boas Dec. ¶ 9.) Named Plaintiff Andrew Barton held a position of E-Commerce Representative in 2014 in the E-Commerce Department. (Boas Dec. ¶ 11.)  Also, as seen in the attached Declarations, members of the Sales Originations and E-Commerce Departments have reported and currently report to a wide variety of managers. (Putative Class Members' Declarations.)

## III.    ARGUMENT

### A.    Standard of Review.

To obtain conditional certification, Plaintiffs must establish that they and the putative class are "similarly situated" with respect to their claims in this case.  *See* 29 U.S.C. § 216(b). Plaintiffs must provide "substantial allegations" that they and these "similarly situated" class members were subject to a "single decision, policy or plan."  *Allen v. Payday Loan Store of Indiana,* No. 1:13-cv-262, 2013 WL 6237852 at *8 (N.D. Ind. Dec. 3, 2013). The decision whether to conditionally certify a collective action under the FLSA lies within the sound

discretion of the trial court. *Adair v. Wisconsin Bell, Inc*., No. 08-C-280, 2008 WL 4224360 at
*2 (E.D. Wisc. Sept. 11, 2008).  Plaintiffs bear the burden of establishing a "reasonable basis"
for the claim that they and other individuals are in fact similarly situated to them. *Id*. at *3.

      Contrary to what Plaintiffs imply in their Motion for Conditional Certification (Plaintiffs'
"Motion"), conditional certification and class notice are not "mere formalities." *Hawkins v.
Alorica, Inc*., 287 F.R.D. 431, 439 (S.D. Ind. 2012). "A court will not certify [a collective action]
based on plaintiffs' say-so alone." *Allen,* 2013 WL 6237852 * 1 (citing *Hadley v. Journal
Broadcast Grp. Inc*., No. 11-C-147, 2012 WL 523752 (E.D. Wis. Feb. 16, 2012)).  Plaintiffs
must provide evidence via affidavits, declarations or other support, beyond mere allegations, that
common questions predominate among members of the class.  *Hawkins*, 287 F.R.D. at 439.
Once proffered, however, a declaration is still subject to scrutiny and the Court "will not stick its
head in the sand and ignore [] evidence" that contradicts the plaintiffs' claims.  *Id.* (citing
*Merriweather v. Southwest Research Inst.* No. 2:09-cv-0328, 2010 U.S. Dist. LEXIS 117297 *
10 (S.D. Ind. 2010)).   A thorough review of the plaintiffs' evidence serves an important and
functional step in the certification process because it would be a waste of the Court's and the
litigants' time and resources to notify a large and diverse class only to later determine that the
matter should not proceed as a collective action because the class members are not similarly
situated.  *Id*.  Indeed, because of the ever increasing costs of class litigation and the relative ease
upon which a class member can opt-in to a collective action versus the "tremendous financial
burden to the employer" in defending class wide claims, courts must seriously consider whether
a class of similarly situated employees who were subject to a common policy or plan truly exists.
*Adair*, 2008 WL 4224360 * 4 (citing *Woods v. New York Life Ins. Co*. 686 F.2d 578, 581 (7th
Cir. 1982)).

Moreover, because some discovery has already taken place, the Court should review Plaintiffs' evidence under an intermediate scrutiny standard. *Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 WL 2959932, at *2-4 (S.D. Ill. July 31, 2008). Although this lawsuit was recently filed, Plaintiffs' counsel represents former Angie's List employees in an Indiana state court action, *Angie's List, Inc. v. Rick Myers, Maggie Leonard, and Brock Crabtree*, Case No: 29D02-1601-PL-588. That case was filed in January 2016 and Plaintiffs' counsel conducted discovery on issues related to this lawsuit. Indeed, the Plaintiffs rely on two of the four depositions taken by Plaintiffs' counsel in *Angie's List, Inc. v. Rick Myers, Maggie Leonard, and Brock Crabtree*, in support of their Motion. Courts in this Circuit have held that when some discovery has been conducted, the court cannot close its eyes to the evidence before them. *Bunyan*, 2008 WL 2959932 at *2-4; *Hawkins*, 287 F.R.D. at 439. Rather, the Court must legitimately scrutinize the evidence and determine if there exists of a class of similarly situated employees who were subject to the same uniform policy allegedly violating the law.

**B.** **Plaintiffs Cannot Establish a Common Policy Prohibiting All "Sales Representatives" From Recording All Hours Worked or Prohibiting the Payment of Overtime.**

> i.   *The only evidence of a common policy is Defendant's policy requiring all non-exempt employees to record their time accurately and to pay overtime for all hours worked over 40 in a workweek.*

In their Motion, Plaintiffs correctly state that to establish that an aggrieved class exists, they must provide evidence that the entire class were "victims of a common policy that violated the law." (Doc. 16, Page ID #82.) Absent personal knowledge, vague allegations that the Plaintiffs or declarants "understood" or "believed" certain instructions were issued to all employees in the putative class is not sufficient for conditional certification. *Bradley v. Arc of Northwest Indiana, Inc.,* No. 2:14-cv-204, 2015 WL 2189284 at *3 (N.D. Ind. May 11, 2015).

13

In their Motion, Plaintiffs allege that the common unifying policy that applied to all putative class members is an alleged company policy that all "sales representatives"[3] were prohibited from recording, or instructed to under record, all hours worked over 40 in a workweek. (Doc. 16 Page ID #83, 85.) Plaintiffs allege this deprived the putative class of overtime pay. (*Id.*) In support of their Motion, Plaintiffs rely on two deposition excerpts and vague declarations from three disgruntled former employees with limited personal knowledge. Plaintiffs, however, have failed to provide evidence of a common illegal policy applicable to all putative class members.

To the contrary, the only evidence of a common policy applicable to the putative class is Defendants' written policies in its handbook requiring all non-exempt employees to record their time accurately and requiring that all hours worked over 40 in a workweek for non-exempt employees be paid at an overtime rate. This is the only policy applicable to the putative class and it does not violate the law. *See Allen,* 2013 WL 6237852 at \*6 (defendant's policy which did not violate the FLSA can be sufficient to defeat conditional certification) (citing *MacGregor v. Farmers Ins. Exchange*, No. 2:10-cv-03088, 2011 WL 2981466 \* 3-4 (D.S.C. July 22, 2011)).

These policies in Defendants' handbook apply to all non-exempt putative class members. Specifically, Section 2.7 of the Handbook requires that all non-exempt employees MUST record all of the time they work so they can be paid for that time:

> If you are a non-exempt employee, you must accurately record time worked for payroll purposes. All employees are required to record their own time at the beginning and ending of each day of the pay week, including before and after

---

[3] Plaintiffs define the putative class members as "sales representatives." Plaintiffs' use of the term "sales representatives" is vague and misleading, as there is not a distinct position of "sales representative." Instead, Plaintiffs have unilaterally defined the term to include both exempt and non-exempt positions from different departments, with different management and different duties. As discussed further in this brief, these positions are not similarly situated. Nevertheless, for the ease of reference, Defendants will refer to Plaintiffs' alleged class as either "sales representatives" or Plaintiffs' "putative class."

lunch and any other time out of the building for reasons other than company business.

All time worked MUST be recorded via your department's standard format and approved by your supervisor each week. Time worked must be submitted to Payroll no later than 10:00 am on the Monday following the end of the pay period.

Filling out another employee's time sheet, allowing another employee to fill your time sheet, falsifying your timesheet, overstating or understating hours, or altering any time sheet in any way, will be grounds for discipline, up to and including termination.

If you find an error on your paycheck, notify your supervisor or Payroll immediately. Legitimate errors will be corrected. If you have been issued a paper check and it is misplaced, notify Payroll immediately so that payment may be stopped at the bank and another check can be issued.

(Barnard Dec. ¶ 4; Ex. A to Barnard Dec. (emphasis in original).)  Section 2.4 of the Handbook states that non-exempt employees are entitled to and paid overtime:

If you're classified as Non-Exempt (Hourly), then you are entitled to overtime pay and subject to specific provisions of federal and state wage and hour laws.

If you are classified as Non-Exempt (Salaried), then you are entitled to overtime pay and subject to specific provisions of federal and state wage and hour laws.

(Barnard Dec. ¶ 5; Ex. A to Barnard Dec.) As a matter of practice, all non-exempt employees are paid overtime rates for all hours worked over 40 in a workweek. (Hochgesang Dec. ¶¶ 4-5.)

Similarly, Defendant's training on recording time, which it provides to all non-exempt employees upon hire (or at the start of tracking time) similarly requires that all non-exempt employees record all of their hours worked. (Johnson Dec. ¶¶ 5-7.) Employees are trained to record all hours worked, including those hours worked over 40. (*Id.* ¶ 5.) Defendant's timekeeping system, TimeTracker, automatically enters an employee's time when they begin work. (*Id.* ¶ 6.)  Non-exempt employees are trained to review this time and to revise the time if it is inaccurate. (*Id.*) During the TimeTracker training, employees learn how to access, revise and

submit time through TimeTracker. (*Id.*) Employees are instructed to record time daily and submit time on a weekly basis. (*Id*. ¶ 7.)

This common policy was communicated to all nonexempt employees. (*Id.* ¶ 5; Boas Dec. ¶ 14; Sherman Dec. ¶ 4.) For example, Craig Boas, has testified in his declaration that all non-exempt employees in Sales Originations are "instructed to accurately record all time worked in the time-keeping program" and the Company prohibits understating hours or working "off the clock." (Boas Dec. ¶ 13-14). Similarly, Sherman has testified that "Non-exempt sales employees are instructed to record all time worked in the TimeTracker system" and that working "off the clock" is prohibited. (Sherman Dec. ¶ 3-4). Employees who worked over 40 hours in a workweek were paid overtime for the hours they worked over 40. (Hochgesang Dec. ¶ 4.) Importantly, each of these managers make clear that they never instructed their employees to not record, or understate, their hours worked over 40 in a workweek. (Boas Dec. ¶¶ 15-16; Sherman Dec. ¶¶ 5-6.)

Thus, the only common policy applicable to the putative class is Defendant's policy requiring all non-exempt employees to report all of their hours worked, including hours worked over 40 in a workweek. (Barnard Dec. ¶¶ 3-6; Johnson Dec. ¶¶ 3, 5.) This policy explicitly contradicts Plaintiffs' allegations and explicitly threatens discipline for any employee or manager who does not report all hours worked.

Importantly, this is the only common policy that was communicated to and understood by the putative class members. Although Plaintiffs provide declarations from three disgruntled former employees alleging, based on limited personal knowledge, that it was their "understanding" they were not supposed to record hours worked over 40 in a workweek, dozens more putative class members deny such an "understanding." At least twenty-four putative class

members deny that there was any common policy applicable to them prohibiting employees from recording hours worked over 40 in a workweek. (Putative Class Members' Declarations).  To the contrary, these twenty-four putative class members make clear that they "have never been instructed by a manager or supervisor not to record [their] time accurately or not record hours worked over 40 in a workweek." (Putative Class Members' Declarations, specifically Crumpton Dec. ¶ 9.) They admit that it is Defendant's policy that employees are "required to record [their] working hours accurately" and these employees "always recorded [their] working hours in the time system, Time Tracker, accurately."  (*Id.* ¶ 7.)  They admit that they are "paid for all hours that [they] work and record in Time Tracker, including overtime rates of 1.5 times [their] regular rate for hours worked over 40 in a workweek[]" and they "have always been paid for all hours [they] recorded."  (*Id.*  ¶¶ 8, 11.)  They "have never been required or expected to work more than 40 hours in a week without being paid for it."  (*Id.*  ¶ 10.)

The twenty-four declarations attached to this Opposition make clear that the Named Plaintiffs and the declarants whose declarations are attached to Plaintiffs' Motion are not similarly situated to the putative class they seek to represent. Plaintiffs' limited declarations identify only three individuals, Nick Smith, Jeff Burks and Ed Sherman, who allegedly "encouraged" the declarants not to record their overtime hours.

Conversely, the twenty-four declarations attached to this Opposition provide a more representative sample of the putative class members. These twenty-four declarations attached to Defendant's Opposition make clear that the Defendant does not and did not have a common policy prohibiting all putative class members from recording their hours worked over 40 in a workweek. (Putative Class Members' Declarations.) These twenty-four declarations also provide direct evidence, *based on personal knowledge*, that the vast majority of Defendant's managers

did not unilaterally instruct employees not to record their overtime hours. (Putative Class Members' Declarations.) These twenty-four declarants represent the experience of working for at least 49 different managers during their careers.  Specifically, these declarations state that the following 49 managers, at a minimum, did not communicate any instruction to not record or under record hours worked over 40 in a workweek: Tim Adams, Matt Akers, Jimi Akiboh, Craig Boas, Cody Boillot, Michael Boyer, Niall Brady, Mark Brodahl, Sean Buffie, Trevor Carlson, Zac Clephane, Andrew Connely, Bill Cox, Joel Curts, Marcellus Davis, Seth Doles, Kevin Drew, Nathan Ellis, Cameron Fila, Roy Galbraith, Lisa Hammann, Jeremy Hawkins, Amanda Jack, Mike Kiefer, Sarah Klee, Zach Kraay, Rob Long, Aaron Longanecker, Ryan Mayfield, Damon McCloud, Roy McWhirter, Rich Minder, Chris Morris, Tara Ortel, Everett Paschal, Ryan Pike, Tabitha Prala, Rich Rivera, Jonathan Roemke, Terry Schable, Chris Sears, Kiel Sherwood, Carl Smith, Peggy Steves, Kim Stoner, Blake Sullivan, Matt Surface, Jeremy Tarter, and Evan Triggs. (Putative Class Members' Declarations.)

> ii. *The Named Plaintiffs' own time and pay records demonstrate that there is no common policy prohibiting "sales representatives" from recording hours worked over 40 in a workweek.*

Perhaps most instructive in denying Plaintiffs' Motion is the Named Plaintiffs' own time and pay records – which prove beyond dispute that Defendant did not have a common policy prohibiting the recording of overtime hours or the payment of overtime.  The non-exempt Named Plaintiffs regularly recorded their overtime hours and they were paid for that time. (Hochgesang Dec. ¶ 5; Ex. A to Hochgesang Dec.; Northern Dec. ¶ 4; Ex. A to Northern Dec.)  The non-exempt Named Plaintiffs' self-reported time records prove that they did not "understand" Angie's List to have an unwritten policy prohibiting the recording of overtime hours because they did not hesitate to record their overtime hours.  (*Id.*)  The non-exempt Named Plaintiffs' self-reported time records are admissions against interest that are dispositive of the Plaintiffs'

Motion. *Postiglione v. Crossmark, Inc*., No. 11-960, 2012 WL 5829793 at *5 (E.D. Pa. Nov. 15, 2012) (conditional certification denied, in part, because the plaintiffs' time records contradicted the plaintiffs' allegations that they were prohibited from working or recording overtime hours); *Velasquez v. HSBC Finance Corp*., 266 F.R.D. 424, 431-32 (N.D. Cal. 2010) (conditional certification denied because plaintiffs' time records proved they reported overtime hours and contradicted plaintiffs' allegation that defendant's managers had an unwritten policy prohibiting the recording of overtime hours or not paying for overtime hours worked).

Defendant's non-exempt "sales representatives," including the non-exempt Named Plaintiffs, manually submitted their time into Defendant's time keeping system. (Boas Dec. ¶ 14; Johnson Dec. ¶ 7; Hochgesang Dec. ¶ 4.) The vast majority of the non-exempt Named Plaintiffs recorded working more than 40 hours in a workweek repeatedly. (Hochgesang Dec. ¶ 5; Ex. A to Hochgesang Dec.; Northern Dec. ¶ 4; Ex. A to Northern Dec.) As demonstrated *supra* pp. 9-10, twenty-five of the thirty-three non-exempt Named Plaintiffs employed in 2015 recorded working overtime in 2015 and were paid for that time.  (*Id.*)  These records show that Named Plaintiffs were paid a total of $141,404.00 in 2015 for more than 1500 overtime hours worked in just one calendar year – calendar year 2015. (*Id.*)  The time records of 25 of the 33 non-exempt Named Plaintiffs employed in 2015 prove that there was no common policy prohibiting the recording or payment of hours worked over 40 in a workweek.  The Named Plaintiffs cannot demonstrate that they are even similarly situated to each other under a common policy prohibiting the recording of overtime hours.

       iii.   *To the extent Plaintiffs' three declarations demonstrate a policy not to record all hours worked, they were rogue instructions not applicable to all putative class members.*

Because Plaintiffs cannot point to any formal policy prohibiting the recording of overtime hours, Plaintiffs argue that there was some unwritten policy communicated by all sales managers

to all putative class members and conditional certification is necessary.  Based on three declarations, Plaintiffs attempt to extrapolate the allegations of a few onto every "sales representative," including employees that held exempt positions, that worked at Angie's List for the past three years.  This would include a putative class of several hundred, potentially more than a thousand, current and former "sales representatives."  As discussed above, Plaintiffs' Motion must be denied because the Named Plaintiffs' own time records contradict the existence of such a "common" policy.  The Named Plaintiffs' time records prove that was not even a "common" policy prohibiting the recording of overtime hours even between the Named Plaintiffs.  (Hochgesang Dec. ¶ 5; Ex. A to Hochgesang Dec.; Northern Dec. ¶ 4; Ex. A to Northern Dec.)

Instead, the evidence produced by the Plaintiffs establishes, at best, that three managers "encouraged" some group of unidentified "sales representatives" (only three employees were identified in Plaintiffs' declarations) to not report all of their hours worked over 40 in a workweek.[4]  Even if this allegation were true, which Defendant denies, there is no evidence of a written policy or communication to the putative class as a whole.  In fact, Declarant Cody Boillot supervised Declarant Sharon Crumpton, who states that she was "never [] instructed by a manager or supervisor not to record [her] time accurately or to not record hours worked over 40 in a workweek." (Putative Class Members' Declarations, see specifically Crumpton Dec. ¶ 9.)

---

[4] Between the three declarations, Plaintiffs only identify three individuals involved in allegedly communicating this policy. Thomas alleges he was told by one supervisor, Nick Smith, to falsify time cards stating he worked between 35 or 40 hours per week. (Doc. 16-4.) Thomas does not allege that any other supervisor communicated this alleged policy to him or that any supervisor, including Smith, communicated this alleged policy to others. (*Id.*) Grant alleges he was vaguely "encouraged" and he "encouraged" others to not report their overtime hours. (Doc. 16-3.) Grant does not identify how many individuals or whom he allegedly "encouraged" to not report their overtime hours. *Id.* Boillot alleges that when he was an Ad Sales Consultant he was instructed "not to report overtime hours worked" and when he became a Sales Manager he was instructed to "make sure the sales representatives did not report hours worked over 40 per week." (Doc. 16-5.) Although Boillot claims he managed 15 sales representatives, he does not allege that he instructed any of them to not report hours worked in excess of 40 per week. (*Id.*)

Further, Plaintiff and Declarant Robert Thomas claims he was terminated in February 2014 – before the two-year statute of limitations for non-willful violations. (Thomas Dec. ¶ 3, Doc. # 16-4, PageID#: 102). Only two of the other Named Plaintiffs reported to Nick Smith at any point during their employment. There is no evidence, based on personal knowledge, that the other several hundred putative class members were informed of this alleged policy. *Bradley,* 2015 WL 2189284 * 5-7 (N.D. Ind. May 11, 2015) (denying conditional certification because declarants lacked personal knowledge of whether the alleged illegal policy was communicated to putative class members). Nor do the declarants state that they personally observed any employee other than themselves work off-the-clock, clock out and then return to work, or not get paid overtime for hours worked over 40 in a workweek. *Allen,* 2013 WL 6237852 * 4-5 (denying conditional certification because declarants lacked personal knowledge of whether other employees worked off-the-clock). Simply put, Plaintiffs have not presented evidence that the alleged "encouragement" they received to not record their time was applicable to other putative class members as whole.

The declarations attached to Defendant's Opposition demonstrate there was no such policy communicated to the putative class. (Putative Class Members' Declarations.) Courts in this Circuit have repeatedly held that a plaintiff cannot satisfy the requirements for conditional certification without providing detailed evidence, based on personal knowledge, that a common illegal policy was in fact communicated *en masse* to the putative plaintiffs. *Bradley,* 2015 WL 2189284 *6; *Harris v. Reliable Reports, Inc*., No. 1:13-cv-210-JVB, 2014 WL 2115352 *7-8 (N.D. Ind. May 21, 2014). The plaintiffs' or declarants' belief or understanding that such a policy was communicated to the class members is not sufficient.

At most, the Plaintiffs have offered evidence of three rogue managers who allegedly "encouraged" a small number of "sales representatives" to not record all of their time.  As a matter of law, evidence of a few rogue managers – particularly when juxtaposed with the Named Plaintiffs' own time records and the declarations of 24 other putative class members proving there was no common policy prohibiting the reporting of overtime hours – is not sufficient for conditional certification. *Hawkins*, 287 F.R.D.  at 439-41; *Adair*, 2008 WL 4224360, * 7; *Postiglione,* 2012 WL 5829793 * 5; *Velasquez*, 266 F.R.D. 424, 431-32. Courts in this Circuit and beyond are clear that conditional certification is inappropriate when the evidence offered by plaintiffs do not demonstrate a common policy applied to all of the putative class members, but only points to instructions from a few rogue managers to a subset of putative class members.  *Id.*

For example, in *Hawkins*, the plaintiff produced email evidence and several declarations from managers and putative class members of an alleged policy instructing customer service representatives to perform pre- and post-shift work off the clock. 287 F.R.D. at 439-41. The Southern District of Indiana, however, held that this was not sufficient evidence of a policy or practice applicable to all putative class members that would warrant conditional certification.  *Id.* at 440-441.  The court noted that to the extent there was an illegal policy or instruction, it was communicated to only a subset of class members and there was no evidence it was distributed to all putative class members. *Id.* Much like this case, the court found persuasive the defendant's handbook, which prohibited off-the-clock work, and declarations from several other managers and putative class members stating that such an illegal policy was never communicated by or to them. *Id.*

Similarly, in *Adair,* the plaintiffs, call center employees, alleged they were not compensated for pre- and post-shift work. 2008 WL 4224360, * 7 (E.D. Wis. Sept. 11, 2008).

The plaintiffs submitted declarations stating that their supervisors permitted them to work pre- and post-shift, knew they were performing the work, but did not pay them for that time. *Id.* The declarants stated they observed their supervisors treat other co-workers in the same way. *Id.* The court, however, held that even if this were true, there was no evidence of a common plan or policy to not compensate plaintiffs for all time worked because the defendant had clear policies requiring plaintiffs to be paid for all time worked. *Id.* The court held that the actions of those few individual supervisors identified in the declarations did not create a common unwritten plan contradicting the written policy.  "Alleged FLSA violations stemming from the enforcement decisions of individual supervisors, rather than a company-wide policy or plan are not appropriate for collective treatment." *Id.* (citing *Salinas v. O'Reilly Auto., Inc.,* 2005 WL 3783598, at *6 (N.D. Tex. 2005) (holding that plaintiff had failed to make the minimal evidentiary showing required for conditional certification where the plaintiff's evidence showed only "that a handful of [defendant's] managers have committed possible FLSA violations in a variety of different ways," finding this insufficient to show that plaintiff and putative class members were victims of a company-wide policy or practice); *Flores v. Lifeway Foods, Inc.,* 289 F.Supp.2d 1042, 1046 (N.D.Ill.2003) (finding that evidence of a "payment practice concerning two out of fifty employees" did not make a modest factual showing that the practice was the common policy or plan of the company)).

Likewise, in *Postiglione*, the court denied the plaintiff's motion for conditional certification in part because policies communicated individually by select supervisors, which were different from the defendant's written policies, were not evidence of a common plan or policy affecting all putative class members. No. 11-960, 2012 WL 5829793. Similarly, in this case, the Named Plaintiffs allege that three individuals "encouraged" the three declarants to not

report overtime hours worked. Just as the court held in *Postiglione*, this allegation is not enough to grant conditional certification where the alleged unwritten "encouragement" was allegedly communicated individually by only a few rogue supervisors, and where the putative class members stem from different departments, different positions and different managers who are not accused of communicating the allegedly illegal policy.  Even in the deposition testimony cited by Plaintiffs in support of their Motion, Vice President of Sales Origination Deborah Romanczuk stated that she was not aware of any alleged instructions to not report or to underreport hours worked. (Doc. 16-1, Page ID# 91.) As such, Plaintiffs' three declarations do not establish a common policy communicated by all managers and applicable to all members of the putative class.

### C.    Individual Issues Predominate.

#### i.  *Conditional Certification Is Inappropriate Because Plaintiffs Include Both Exempt and Non-Exempt Employees in Their Proposed Class.*

It is axiomatic that "[w]here a collective action contains a mix of employees, some of whom are classified as exempt from the FLSA's requirements, and some of whom are classified as non-exempt, there is no factual nexus between the collective action members' situations, and conditional certification is not appropriate."  *Romero v. H.B. Automotive Group, Inc*., No. 11 CIV. 386 CM, 2012 WL 1514810 * 12 (S.D. NY May 1, 2012); *see also Hunter v. Sprint Corp.,* 346 F.Supp.2d 113, 119–20 (D.D.C.2004); *Diaz v. Electronics Boutique of Am., Inc.,* No. 04–CV–0840E, 2005 WL 2654270, at *3–4 (W.D.N.Y. Oct.17, 2005).  Indeed, Plaintiffs have not identified any case holding conditional certification appropriate where both exempt and non-exempt employees were certified in the same class.

This is true because the claims of the non-exempt class members and the claims of the exempt class members are fundamentally different. *Id.* The exempt class members must establish

they were misclassified as exempt, when in actuality they primarily performed non-exempt duties. This requires a highly fact-intensive individualized assessment as to each members' job duties, responsibilities, authority, and employment relationship. This District has previously held that even class claims of only exempt employees alleging misclassification often require too much of an individualized factual inquiry to warrant conditional certification of a class. *Clausman v. Nortel Networks, Inc.,* IP 02-0400-C-M/S, 2003 WL 21314065, at *4-5 (S.D. Ind. May 1, 2003) (J. McKinney); *see also Reich v. Homier Distrib. Co., Inc*., 362 F. Supp.2d 1009, 1013-1014 (N.D. Ind. 2005) (because determining whether an exempt employee was misclassified requires "a highly individualized, fact specific inquiry" conditional certification of a class is not appropriate) (citing *Pfaahler v. Consultants for Architects, Inc.,* No. 99 C 6700, 2000 WL 198888, at *2 (N.D. Ill. February 8, 2000) ("the court would be required to make a fact-intensive, individual determination as to the nature of each claimant's employment relationship with CFA . . . Where this is the case, certification of a collective action under the FLSA is inappropriate.")); *Holt v. Rite Aid Corp.,* 333 F.Supp.2d 1265, 1274-75 (M.D. Ala.2004) (denying collective action where individualized inquiries required would obviate "the economy of scale envisioned by the FLSA collective action procedure"); *Mike v. Safeco Ins. Co. of Am.,* 274 F.Supp.2d 216, 220-21 (D. Conn.2003); *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 413 (D.Or.2002); *Morisky v. Pub. Serv. Elec. and Gas Co.,* 111 F.Supp.2d 493, 499 (D.N.J.2000).

Conversely, the claims of the non-exempt putative class members differ significantly from the claims of the exempt putative class members, because the non-exempt members are already deemed overtime eligible. For non-exempt class members, the key inquiry is whether

they worked over 40 hours in a workweek, when and how many hours over 40 in a workweek they worked and whether they were paid overtime rates for that time.

In this case, Plaintiffs attempt to do exactly what *Romero* and its progeny forbid – they seek to certify a class of both exempt and non-exempt employees. For example, Plaintiffs include the positions of Account Services Representative[5] (Troy Padilla) and Advertising Sales Training Specialist (James Grant) as part of their putative class. Both of these positions were exempt positions under the FLSA. (Boas Dec. ¶¶ 8, 12.) As discussed above, these exempt positions are not similarly situated to non-exempt positions. The claims of the exempt employees are materially different than the non-exempt employees and would require a highly individualized, fact specific inquiry which this District has held to be inappropriate for conditional certification. *Clausman,* IP 02-0400-C-M/S, 2003 WL 21314065, at *4-5 (S.D.Ind. May 1, 2003) (J. McKinney). Because the legal and factual analysis between exempt and non-exempt positions differ, as a matter of law, they are not similarly situated and conditional certification is not appropriate. *Id.*

Plaintiffs attempt to avert this dispositive issue by arguing that the generic deposition testimony of Deborah Romanczuk and Christine Grebenc preclude any argument that Advertising Sales Training Specialist and Account Service Representatives were exempt employees. As an initial matter, Plaintiffs mischaracterize the deposition testimony of Grebenc and Romanczuk. The question asked was whether Romanczuk required "salespeople to keep track of their work hours." (Doc. # 16-1, Page ID# 90). In response to the generic question about "salespeople," Romanczuk referred to the three "sales" positions within the Sales Originations department that were in existence at the time of her March 1, 2016 deposition – specifically Eligibility       Representative,       Discovery       Representative,       and       Senior       Solutions

---

[5] Improperly referred to in Plaintiffs' Complaint as Account Manager or Account Executive.

Consultant. (Declaration of Deborah Romanczuk, "Romanczuk Dec.," ¶ 3, attached as Exhibit 9.) This question regarding "salespeople" did not refer to or mention the exempt positions of Advertising Sales Training Specialist or Account Service Representatives. (*Id.*) Nor did Romanczuk's testimony refer to any other position or former position in the Sales Originations department or any other Angie's List Department. (*Id.*) Similarly, Grebenc explicitly stated that she did not know if "sales representatives" outside of Sales Origination or "account managers" were non-exempt or entitled to overtime. (Doc. 16-2, Page ID# 96).

Even if the deposition testimony of Grebenc and Romanczuk had mistakenly referred to all of the positions named in this putative class, it would not matter. The law is clear that whether an employee is exempt or non-exempt is a legal issue to be determined by the Court – not individual witnesses. *DeWalt v. Greencroft Goshen, Inc.*, 902 F. Supp. 2d 1127, 1132-33 (N.D. Ind. 2012) (citing *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 869 (7th Cir. 2008) (disregarding employer's statement that an employee's position was non-exempt and granting summary judgment to the employer)). "An employer's statement does not determine an employee's proper classification." *DeWalt*, 902 F. Supp. 2d at 1140. Rather, the FLSA and relevant federal regulations determine whether the employee is exempt. *Id.* In *DeWalt*, a case similar to this, the defendant's Vice President for Human Resources stated that she thought all marketing associates were non-exempt under the FLSA. *Id.* at 1139-40. The Court specifically held that the Vice President's opinion did not determine whether the marketing associates were non-exempt under the FLSA. *Id.* The issue of exempt status is determined by the law. *Id.* As a consequence, the mischaracterized prior testimony of Grebenc and Romanczuk does not allow the Plaintiffs to include the claims of both exempt and non-exempt employees in the same class.

Further, while this putative class action includes some representatives involved in sales, it also involves several other positions that are not categorized as "sales" as well as persons in different Departments and exempt positions.  Undeterred by this factual burden, Plaintiffs have decided to unilaterally change the definition of "sales representatives" in this lawsuit to include a host of other positions that are not "sales representative" positions, including exempt Advertising Sales Training Specialist positions, exempt Account Services Representative positions in the Client Success Department, and Big Deal Representatives in the now defunct Big Deal Department. (Boas Dec. ¶¶ 7-12.) Plaintiffs, of course, cannot play so fast and loose with definitions or the facts. Rather, the record is clear that while certain sales representatives in the Sales Originations Department may be non-exempt, that status does not apply to all positions included in the putative class. (*Id.* ¶ 8.) Further, Account Services Representatives and Big Deal Representatives are not "sales representatives" and are not even in the Sales Originations department.  (*Id*. ¶¶ 7-9.) The Advertising Sales Training Specialist is also not a "sales representative" position. (*Id*. ¶ 12.) Thus, Plaintiffs have not provided evidence that all of the positions included in the putative class are non-exempt positions or otherwise similarly situated.

Further, even if the exempt and non-exempt employees were similarly situated, which they are not, this further proves there is no common illegal policy applicable to the putative class. As discussed above, Plaintiffs allege there was some unwritten policy common to all putative class members prohibiting them from recording hours worked over 40 in a workweek and getting paid overtime for those hours.  Plaintiffs allege, as they must, that this common policy facially violated the FLSA.  However, even if this were true, which it is not, this alleged policy would not facially violate the law with respect to the exempt employees in the putative class.  As a matter of law, exempt employees are not entitled to overtime compensation for hours worked

over 40 in a workweek.  Thus, even by Plaintiffs' contorted definition of the class there can be

no common, illegal policy applicable to all putative class members.

> ii. *Individual issues predominate in determining whether Defendant had constructive knowledge of each putative class member allegedly working beyond 40 hours in the workweek without recording their time.*

To establish their claims, it is not sufficient for the Plaintiffs to simply allege they worked

more than 40 hours per week and were not paid for that time, they must also establish that

Defendant's managers had actual or constructive knowledge that they worked overtime and were

not paid for it. *Adair*, 2008 WL 4224360 * 7. It is not enough for a few individual class members

to allege their supervisor was aware and permitted them to work over 40 hours in a workweek

without being paid overtime.  *Id.*  Rather, to satisfy the requirements for conditional certification,

plaintiffs must provide factual evidence based on personal knowledge that Defendant, as whole,

was aware and permitted the putative class, as a whole, to work more than 40 hours in a

workweek without being paid for it on a widespread basis.  *Id.*

In this case, the Named Plaintiffs have not provided evidence of widespread constructive

knowledge.  They have merely alleged that three managers vaguely "encouraged" three

declarants not to report their hours worked over 40. (Doc. 16-3, 16-4, 16-5.) The Named

Plaintiffs' evidence, however, is contradicted by their own time records, which establish that

Defendant and its managers did not have any constructive knowledge that the putative class

members as a whole were not reporting overtime hours or were underreporting overtime hours.

(Northern Dec. ¶ 4; Ex. A to Northern Dec.) The non-exempt Named Plaintiffs' self-reported

time records establish that Defendant's managers reasonably believed that their employees were

reporting all hours worked accurately because the non-exempt Named Plaintiffs consistently and

repeatedly reported working overtime hours. (Northern Dec. ¶ 4; Ex. A to Northern Dec.) In fact,

Lead Plaintiff Nick Williams was paid $38,151.12 in overtime compensation alone for calendar

year 2015. (Hochgesang Dec. ¶ 5; Ex. A to Hochgesang Dec.)  Similarly, declarations from twenty-four putative class members attached to this Opposition demonstrate that there was no common policy prohibiting the reporting of overtime hours and there would be no reason for any of the 49 managers identified in the declarations to believe the time records of the Named Plaintiffs were inaccurate.  (Putative Class Members' Declarations.)  For the non-exempt Named Plaintiffs' to now run away from their time records and claim that Defendant's managers knew, as a whole, that the putative class members were working more hours than reported on their time records would require an individualized inquiry into what each manager observed, when they observed it and whether they should have reasonably known, with respect to each putative class member, that they worked more hours than they reported. *See Rutledge v. Claypool Elec., Inc.*, No. 2:12-cv-159, 2012 WL 6593936 at *12-13 (S.D. Ohio Dec. 17, 2012), *report and recommendation adopted*, No. 2:12-cv-0159, 2013 WL 435058 (S.D. Ohio Feb. 5, 2013) (denying motion for conditional certification and finding putative class to not be a "manageable class" where an individualized inquiry into the behavior various supervisors would be required to determine whether the alleged harm occurred). There are at least 49 identified managers in the putative class members' declarations attached in support of this Opposition. (Putative Class Members' Declarations.) This type of highly factual individualized inquiry is not appropriate for class certification.

      **D.**    **Plaintiffs' Proposed Notice Is Improper.**

Even if a collective action is conditionally certified, and it should not be for the reasons set forth above, Plaintiffs' Proposed Collective Action Notice and Consent to Join Form ("Proposed Notice") is improper. (Doc. 16, Page ID#: 86; Doc. 16-6; Doc. 16-7.) "District courts have discretion to craft and facilitate the notice and other communications that a named plaintiff

sends to potential plaintiffs." *Campeau v. NeuroScience, Inc.*, 86 F. Supp. 3d 912, 918 (W.D. Wis. 2015) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). "Yet, courts must be scrupulous to respect judicial neutrality and to avoid even the appearance of judicial endorsement of the merits of the action." *Campeau*, 86 F. Supp. Ed at 918 (quoting *Jimenez v. GLK Foods LLC*, No. 12-cv-209, 2013 WL 3936928 at *4 (E.D. Wis. July 30, 2013)). Plaintiffs' Proposed Notice is improper because (1) Plaintiffs have not clearly defined the putative class in the proposed notice; (2) Plaintiffs' requested follow-up notice is not appropriate; (3) Plaintiffs' requested 120-day notice period for undelivered notices is improper; (4) Defendant should be allowed to specifically deny the claims in the notice; and (5) prospective class members should be apprised of their responsibilities in joining the lawsuit.

        i.   *Plaintiffs Have Not Clearly Defined the Putative Class in the Proposed Notice.*

Plaintiffs have proposed an ill-defined and overly broad class that fails to adequately alert putative class members of their eligibility. *See Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 994 (N.D. Ill. 2010) (revising proposed notice where proper job position was not used). Plaintiffs request that the Proposed Notice be sent to all "sales representatives." "Sales representative" is not and has not been a job position at Angie's List.  It would be impossible for putative class members to determine whether they are eligible for the proposed class because they do not and did not have the title of "sales representative."  Additionally, such a vague and broad term would undoubtedly solicit responses from individuals who were not employed in the specific positions articulated as part of the proposed class in Plaintiffs' Complaint.  Defendant requests that any proposed Notice specifically identify the actual positions that are part of the proposed class as identified in Plaintiffs' Complaint. (e.g. Senior Solutions Consultant, Discovery Representative, Ad Sales Consultant and/or Eligibility Representative).

Furthermore, for the reasons discussed above, the Court should not include exempt positions (e.g. Account Manager, Account Executive or Advertising Sales Training Specialist) in the proposed class.  The Court should also exclude Big Deal Representative/Consultant from the proposed class because that position was from a different department, in a different building, with different managers, different compensation structures and different duties.  (Harkenrider Dec. ¶¶ 3-4.)  In their Motion, Plaintiffs have only put forth allegations that three individuals in the Sales Origination department were prohibited from recording hours worked over 40 in a workweek.  Plaintiffs have not put forth any evidence that Big Deal Representatives/Consultants – who worked in a separate department, in a different building, under different management and with different positions and duties – were subject to the same alleged policy as the three individuals identified in Plaintiffs' declarations.  Nor have Plaintiffs put forth evidence that Account Service Representatives who worked in the Client Success Department were subject to the same alleged policy as the three declarants.  There is simply no evidence to support inclusion of exempt positions or Big Deal Representatives/Consultants in the putative class.

If the Court conditionally certifies a collective action in this matter, the proposed notice should be revised to include only non-exempt Advertising Sales Consultants, Discovery Representatives, Eligibility Representatives, and Senior Solutions Consultants in the Sales Originations Department.

### ii.  Plaintiffs' Requested Follow-Up Notice Is Improper.

Plaintiffs also request that a follow-up notice be sent halfway through the notice period. [Doc. 16 at Page ID#: 86; Doc. 16-7.] A follow-up letter is "unnecessary . . . once a potential plaintiff receives notice, their options and deadlines are clear. No follow-up letter is required or appropriate." *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 785 (C.D. Ill. 2015). *See also*

*Smallwood v. Illinois Bell Telephone Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010) (granting defendant's request to not send reminder letters as "a reminder is unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit"). As such, Plaintiffs should not be allowed to send a follow-up notice.

> ### iii. Plaintiffs Requested 120-Day Notice Period for Undelivered Notices Is Improper.

Plaintiffs request a 120-day notice period for notices that are "returned undeliverable and a new address is located." (Doc. 16-6 at Page ID# 110-112.) This longer period is improper because the 60-day notice period automatically builds in time for such delivery issues. In determining the number of days in the notice period, courts balance the "need for speedy justice while at the same time allowing potential plaintiffs to fully consider their options." *Baden-Winterwood v. Life Time Fitness*, 2006 WL 2225825 * 3 (S.D. Ohio Aug. 2, 2006) (finding 45-day notice period to be sufficient because a longer period "would needlessly delay the litigation"). Many courts in this circuit have found a single 60-day notice period to be reasonable. *See Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 362 (W.D. Wis. 2014) (60-day deadline is "generally sufficient"); *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 765 (N.D. Ill. 2011) (rejecting plaintiffs' requested 120-day notice period because "a 60-day opt-in period is reasonable and will fairly balance the parties' competing concerns"); *Sharpe v. APAC Customer Servs., Inc.*, 2010 WL 1292154 * 2 (W.D. Wis. Mar. 29, 2010) (rejecting plaintiffs' requested 90-day opt-in period and granting a 60-day opt-in period). As a consequence, Plaintiffs should only be allowed a single 60-day opt-in period.

> ### iv. Defendant Should Be Allowed to Specifically Deny Plaintiffs' Claims in the Notice.

In Plaintiffs' Proposed Notice, Plaintiffs specifically layout their alleged claims but only include a blanket denial by Defendant of the claims. (See Doc. 16-6 at Page ID#111 ("Angie's

List, Inc. denies that it violated any laws or did anything wrong".)) Defendant requests to include a more specific denial of the claims in place of this blanket denial. Specifically, Defendant requests that the following language be added: "Angie's List, Inc. denies that it instructed employees not to report overtime hours that they worked, denies that it failed to pay employees for all overtime hours owed, and denies that it violated the law or did anything wrong." Courts have allowed a defendant to include a denial of the claims. *See Sharpe v. APAC Customer Servs., Inc.*, 2010 WL 1292154 * 2 (W.D. Wis. Mar. 29, 2010) (adding denial of claims to the notice). Accordingly, Defendant should be allowed to include a specific denial of Plaintiffs' specific claims in the notice.

> v.   *The Prospective Class Members Should Be Apprised of Their Responsibilities in Joining the Lawsuit.*

The Plaintiff's proposed notice omits important information that courts regularly include in collective action notices.  The Court should notify prospective class members of the full responsibility and consequence of joining an FLSA collective action, such as the prospect of being liable for costs and expenses and the responsibility of participating in the litigation.

Defendant requests the Court provide notice to prospective class members of the consequences of an adverse judgment by proposing the following language: "If you do not prevail on your claim, Angie's List's court costs and expenses may be assessed against you." Courts have regularly held that prospective class members must be aware of the risks associated with joining a collective action, including the potential assessment of costs.  *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 362 (W.D. Wis. 2014) (requiring the following language to be added to the notice: "The risks of joining this lawsuit may include (1) being required to participate in the litigation by testifying at deposition and/or trial; and (2) having a portion of the defendant's court costs and expenses assessed against you if you do not prevail on your claim.");

*Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 765 (N.D. Ill. 2011) (requiring notice to contain language concerning payment of defendant's court costs and expenses). *See also Baden-Winterwood v. Lifetime Fitness*, 2006 WL 2225825 * 1 (S.D. Ohio Aug. 2, 2006); *Pierce v. Wyndham Vacation Resorts, Inc.,* 2015 WL 3651464 * 2 (E.D. Tenn. June 1, 2015); *Creten-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058743 * 3-5 (D. Kan. July 15, 2009); *Bah v. Shoe Mania, Inc.*, 2009 WL 1357223 * 4 (S.D. NY May 13, 2009). Prospective class members should be apprised of both the potential benefits and consequences of joining the action.

Similarly, the Court should inform prospective class members that they may be obligated to testify at trial and at depositions and may be required to travel for the trial if they join the action.  Courts have held that prospective class members should be made aware of such basic obligations when joining a class action.  *Bitner*, 301 F.R.D. at 362; *Baden-Winterwood*, 2006 WL 2225825 * 2; *Creten-Miller*, 2009 WL 2058743 * 3-5; *Bah*, 2009 WL 1357223 * 4.

> *vi.  Defendant's Proposed Notice.*

To rectify the above deficiencies, Defendant has attached Defendant's Proposed Notice as Exhibit 10.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Conditional Certification of Collective Action. In the alternative, Defendant requests that the Court authorize the issuance of Defendant's Proposed Notice.

Respectfully submitted,

*/s/Amy S. Wilson*
Amy S. Wilson (#24183-49)
Jennifer A. Rulon (#32131-53)
Frost Brown Todd LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
Phone: (317) 237-3800
Facsimile: (317) 237-3900
awilson@fbtlaw.com
jrulon@fbtlaw.com

Neal Shah (admitted *pro hac vice*)
Frost Brown Todd LLC
301 East Fourth Street
Great American Tower, Suite 3300
Cincinnati, OH 45202
Phone: (513) 651-6741
Facsimile:(513) 651-6981
nshah@fbtlaw.com

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been filed electronically with the Court

on this 15th day of July, 2016.  All counsel of record will receive a copy of this filing via the

Court's CM/ECF notification system:

Christopher S. Stake
Kathleen Ann DeLaney
DELANEY & DELANEY LLC
cstake@delaneylaw.net
kathleen@delaneylaw.net

                                     */s/Amy S. Wilson*

FROST BROWN TODD LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
Phone:  317-237-3800
Fax:  317-237-3900
awilson@fbtlaw.com
jrulon@fbtlaw.com

0123993.0636922   4851-3698-2834v3