UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **NICK WILLIAMS,** *et al.*,<br>**individually and on behalf of others**<br>**similarly situated,**<br><br>    **Plaintiffs,**<br><br>    vs.<br><br>**ANGIE'S LIST, INC.,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)  CAUSE NO. 1:16-cv-878-WTL-MJD<br>)<br>)<br>)<br>) |

## ENTRY ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION

This cause is before the Court on the Plaintiffs' Motion for Conditional Certification of Collective Action and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Dkt. No. 15). This motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons, and to the extent, set forth below.

### I.    BACKGROUND

The Plaintiffs in this case are two current employees and several former employees of Angie's List, Inc. ("Angie's List"). They filed this lawsuit on behalf of themselves and other similarly situated individuals, alleging that Angie's List failed to compensate them for overtime hours worked as required by the Fair Labor Standards Act ("FLSA"). They further allege parallel claims under state laws governing overtime. Some of the Plaintiffs also seek under state law additional earned but unpaid compensation.

The Plaintiffs seek conditional certification for a collective action of current and former employees who are or were in the following positions in the Sales Origination Department at any time between an undetermined point in 2013 and the present: Advertising Sales Consultant,

Discovery Representative, Eligibility Representative, and Senior Solutions Consultant. Dkt. No. 46 at 17.[1] The Plaintiffs also seek to include in the collective action current and former employees who were Big Deal Representatives in the former Big Deal Department or who are or were E-Commerce Sales Representatives in the E-Commerce Department. Dkt. No. 46 at 17. For ease of reference, the Court refers to the collective employees in these six job titles as "Putative Class Members." The Plaintiffs contend that they and the Putative Class Members were told to underreport or not report overtime hours worked, and thus were not paid for all hours worked.

Angie's List objects to the appropriateness of the FLSA collective action and maintains that, in a number of ways, the Plaintiffs fail to show that they are similarly situated to the Putative Class Members. Angie's List also contends that the Plaintiffs have failed to show a uniform policy that required the Putative Class Members to underreport or not report overtime hours.

## II.     FLSA COLLECTIVE ACTION

The Fair Labor Standards Act ("FLSA") provides that an action for unpaid overtime may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). When an employee brings an FLSA claim on behalf of other similarly situated employees, it is termed a "collective action." An individual can join the collective action only by consenting to become a participant. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.");

---

[1] The Court uses the description found in the Plaintiffs' reply brief because its motion, corresponding brief, and proposed notice do not adequately describe the class.

*see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013) (comparing requirement that FLSA collective action plaintiffs must opt in to action with procedure of opting out of class actions governed by Fed. R. Civ. P. 23); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 973 (7th Cir. 2011) (same).

Because the FLSA does not specify how collective actions are to proceed, the management of these actions has been left to the discretion of the district courts. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171-72 (1989). In this circuit, district courts generally follow a two-step inquiry when certifying collective actions.[2] In the first step, the Court must determine whether to conditionally certify an action as a collective action. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (internal citations omitted).

At the first step, the Court considers "whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. District courts in this circuit typically apply the following analysis: To be similarly situated at the first step, the Plaintiffs need make only a modest factual showing that they and potential

---

[2] The Court acknowledges that the Seventh Circuit, referring to FLSA collective actions and Rule 23 class actions, has opined that "there isn't a good reason to have different standards for certification of the two different types of action." *Espenscheid*, 705 F.3d at 772. Under different circumstances and facts than those present here, the Seventh Circuit in *Espenscheid* merged the standards for the collective and class actions. The parties here present only the two-step inquiry in their briefing, so the Court applies that test here.

plaintiffs were victims of a common policy or plan that violated the law. *See, e.g.*, *Bradley v. Arc of N.W. Ind., Inc.*, No. 2:14-cv-204, 2015 WL 2189284, at *2 (N.D. Ind. May 11, 2015) (citing *Allen v. The Payday Loan Store of Ind., Inc.*, No. 2:13-cv-262, 2013 WL 6237852, at *1 (N.D. Ind. Dec. 3, 2013)); *see also Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012). The Court analyzes the pleadings and any affidavits to determine whether that modest showing is made. *Knox v. Jones Group*, ---F.Supp.3d ----, 2016 WL 4943825, at *2 (S.D. Ind. Sept. 16, 2016).

If the Court conditionally certifies a collective action and authorizes notice to potential participants, it proceeds to the second step in the certification process at the close of discovery and after the opt-in process is completed. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008); *Austin*, 232 F.R.D. at 605. In that step, because discovery is completed and the Court has more information on which to base its decision, a defendant can request that the Court reevaluate whether the opt-in plaintiffs are similarly situated to the named representative plaintiffs. *Jirak*, 566 F.Supp.2d at 848 (citing *Heckler v. DK Funding*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007)).

### III.   DISCUSSION

This case is at the first step in the collective action certification inquiry. The Plaintiffs allege that, "Angie's List, through its sales trainers, sales managers, sales directors, and/or other executives and officers, routinely and regularly instructed sales representatives to under-report, or not report, hours worked in excess of forty hours per week." Dkt. No. 16 at 3 (citing Dkt. No. 7 ¶ 43)[3]. They also allege that "Angie's List knew or should have known that its sales

---

[3] The Plaintiffs define "sales representatives" as "including, but not limited to: Senior Solutions Consultant, Ad Sales Consultant, Senior Sales Associate, Account Manager, Account

representatives regularly worked hours in excess of 40 hours per week, but did not pay them for all overtime hours worked." *Id.* (citing Dkt. No. 7 ¶ 45). "Thus, Angie's List had a common policy of setting expectations for its sales representatives to work long hours, but to under-report those hours worked in order to avoid paying them overtime." *Id.* at 9.

To meet their burden, the Plaintiffs "need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). To this end, the Plaintiffs submitted two deposition excerpts and five affidavits.[4] The depositions describe certain job types as non-exempt from the FLSA's overtime provisions, supporting the Plaintiffs' allegation that Angie's List was required to pay overtime to those categories of employees. The affidavits, three of which are from named Plaintiffs, attest to various facts, but do not provide sufficient support for conditional certification of the Putative Class Members.

Kiel Sherwood, who is not a plaintiff in this lawsuit, stated in his affidavit that he was a Sales Manager in the Sales Origination Department. Sherwood Aff. 1. He further stated that he "was responsible for supervising approximately 45 Advertising Sales Consultants who may be owed overtime by Angie's List." *Id.* at 2. Sherwood also attested that "[o]n multiple occasions

---

Executive, Discovery Representative, Big Deal Representative/Consultant and/or Eligibility Representative" positions. *Id.* (citing Dkt. No. 7 ¶ 37)*; see also* Dkt. No. 66 ¶ 57.

[4] Angie's List requests that the Court apply "an intermediate scrutiny standard" to assess conditional certification in this case because, they contend, discovery in another lawsuit has already taken place regarding issues in this case. Dkt. No. 34 at 13. In this case, "[t]he parties have served written discovery requests, but none have been answered and no depositions have been taken . . . ." Dkt. No. 46 at 4. The parties have also met with the magistrate judge in this matter regarding discovery disputes. *See* Dkt. No. 67. To date, the parties have not engaged in the type of substantial discovery necessitating a higher level of scrutiny. Therefore, the Court does not apply intermediate scrutiny in its analysis.

between February 18, 2013, and September 4, 2015, Mr. Boas, Mr. DeVries, Mr. Corbett, Mr. Hulbert, Mr. Adams, and Mr. Sherman [various supervisors of Sherwood and their superiors] instructed [him] that the Advertising Sales Consultants would not receive overtime compensation when they worked in excess of 40 hours per week, even if they needed to work more than 40 hours per week in order to hit their sales goals," *id.* at 1; that "[Mr. Sherman, Sherwood's supervisor,] told [him] to shave hours off of the total hours of the Advertising Sales Consultants in order to pay them less overtime than they were actually owed," *id.* at 2; and that "[w]hen Advertising Sales Consultants under [his] supervision reported to [him] weekly hours worked in excess of 40 hours (or 48 hours), [he] frequently asked them to change their hours worked as recorded . . . to reduce their reported hours when [he] knew that their overtime pay would not be approved," *id.* He stated specifically that he supervised Plaintiff Erin Burgess and that she "has worked overtime hours at Angie's List, but has not been compensated for all overtime hours that she has worked." *Id.* Sherwood's affidavit might provide the Plaintiffs with the required modest factual showing that Advertising Sales Consultants were subjected to a common policy or plan, but it does not do the same for the Putative Class Members who held other positions.

In his affidavit, Plaintiff James Bryan Grant provides additional support for the existence of a common policy, but again, only as applied to Advertising Sales Consultants. He stated that, as an Advertising Sales Training Coordinator, he "encouraged Angie's List employees not to report their overtime hours worked on the instructions of Mr. Burks [Grant's immediate supervisor]."[5]  Grant Aff. 1. He also stated that when he worked as a "sales representative," he worked over 40 hours per week, but was not paid overtime; his sales manager instructed him not

---

[5] Although Grant does not state that he trained Advertising Sales Consultants, the Court draws this reasonable inference from his affidavit.

6

to report overtime hours worked; and "[it] was [his] understanding that these instructions were coming from Angie's List's Sales Directors, Ed Sherman and Craig Boas." *Id.* at 2. He further stated that "Angie's List has created a culture of expectation among its sales representatives that they are expected to work in excess of 40 hours per week in order to meet their sales goals, but not to report their hours worked in excess of 40 hours per week." *Id.* These vague allegations do not show that all of the Putative Class Members were subjected to a common policy. If the Court presumes that Grant meant Advertising Sales Consultant when he attested to "sales representative" in his affidavit, then his affidavit offers support only for the claim that a common policy applied to Advertising Sales Consultants.

     Cody Boillot's affidavit contains similar facts. He attested that, as an Advertising Sales Consultant, he did not receive compensation for all overtime hours worked and was instructed not to report overtime hours worked. Boillot Aff. 1. He also attested that he supervised up to fifteen "sales representatives" at a time. *Id.* He also stated that "[a]s a Sales Manager, [he] reported to Jeff Burks, Director of Advertising Training and later Mark Goshell. During [his] training as a sales manager, [he] was instructed to make sure that the sales representatives did not report hours worked over 40 per week." *Id.* He further attested that he reported to Sherman, and "Sherman instructed [him] that the sales representatives under [his] supervision were not permitted to report any hours worked in excess of 40 hours per week." *Id.* In addition, he stated that "[d]uring the summer of 2015, [he] complained in person on multiple occasions about Angie's List's widespread practice of failing to pay overtime compensation to its sales representatives, including to Ed Sherman, Mike Rutz, the former Vice President of the Sales Origination Department, Human Resources Manager Jeff Barnard, and Senior Human Resources Manager Angie Woods." *Id.* at 2. Boillot's affidavit refers only to "sales representatives,"

7

which, again, does not support the Plaintiffs' allegation that all of the Putative Class Members were subjected to a common policy. Giving the Plaintiffs the full benefit of the doubt, Boillot's affidavit lends support only for the claim that a common policy applied to Advertising Sales Consultants, if Advertising Sales Consultants is what Boillot meant by "sales representatives."

The remaining affidavits attest to various facts, but do not support the Plaintiffs' allegations that all of the Putative Class Members were subjected to a common policy.

To rebut the Plaintiffs factual assertions, Angie's list submitted its written policies pertaining to overtime, evidence that it paid overtime to various Plaintiffs, and several affidavits from managers and Putative Class Members.[6] Where a court is provided with evidence contradicting the plaintiffs' claims, it "will not 'stick its head in the sand' and ignore that evidence." *See Hawkins v. Alorica*, 287 F.R.D. 431, 441 (S.D. Ind. 2012) (citation omitted). It would be improper, however, to accept Angie's List's evidence over conflicting evidence from the Plaintiffs because the Court is not permitted to make credibility determinations. At this stage, conflicts and reasonable inferences are resolved in the Plaintiffs' favor.

Regardless of what Angie's List's evidence shows, the Plaintiffs have failed to meet their initial burden. They have not made a minimal showing that all of the Putative Class Members were victims of a common policy or plan that violated the law or that this case is appropriate for court-facilitated notice. While the limited factual evidence provides support for finding

---

[6] To state a claim for unpaid overtime, the Plaintiffs need only show Angie's List had actual or constructive knowledge of the Plaintiffs' overtime work and did not pay them. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011). That Angie's List has written policies that conflict with the Plaintiffs' allegations does not determine whether the Plaintiffs have viable overtime claims. Moreover, evidence that Angie's List has paid overtime to the Plaintiffs does not mean that additional overtime is not owed or that there was not a common policy or plan to reduce or prevent paying employees for overtime worked.

Advertising Sales Consultants similarly situated to one another, the Plaintiffs have not proposed such a subset of Putative Class Members.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Plaintiffs' Motion for Conditional Certification of Collective Action and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Dkt. No. 15). Should the Plaintiffs uncover evidence supporting a collective action, they can file another motion for conditional certification. The Court, however, cautions the parties that evidence supporting their positions should refer to the particular job titles referred to in the Putative Class Member group. Vague references to "sales representatives" and "sales managers" do not assist the Court in its analysis.

SO ORDERED: 11/30/16

_William Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.

9