IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NICK WILLIAMS, et al.,                    )
On Behalf of Themselves and               )
All Others Similarly Situated,            )
                                          )
          Plaintiffs,                     )
                                          )
     v.                                   )     CAUSE NO.  1:16-cv-878-WTL-MJD
                                          )
ANGIE'S LIST, INC.,                       )
                                          )
          Defendant.                      )

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL

Plaintiffs, by counsel, and pursuant to Fed. R. Civ. P. 37(a), move to compel production

of certain documents that have been withheld by Defendant Angie's List, Inc. ("Angie's List") in

response to Request for Production No. 5, *i.e.*, Sales Force records and data from April 19, 2013,

to the present.  Angie's List has produced Sales Force records and data from September 1, 2014,

to August 31, 2015, but has not produced: (a) records and data from April 19, 2013, to August

31, 2014, or (b) records and data from September 1, 2015, to the present.  There is no principled

basis for Angie's List to produce one of three years of relevant Sales Force information, while

withholding the other two years of the same information.

I.     **Background**

       A.     **Facts of Case Relevant to Discovery Dispute.**

       Plaintiffs filed suit against Angie's List on April 19, 2016. Dkt. 1. Plaintiffs are 47

current or former employees of Angie's List.[1] Dkt. 66. Plaintiffs' claims arise under the overtime

provisions of the Fair Labor Standards Act. *Id*. Specifically, Plaintiffs claim that they routinely

---

[1] On March 6, 2017, Plaintiffs filed a Motion for Leave to file a Sixth Amended Complaint. Dkt. 94. If
leave is granted, Plaintiffs' Sixth Amended Complaint will add one more Plaintiff, and 48 in total. Dkt.
94-1.

worked in excess of forty hours per week, but Angie's List routinely and regularly instructed them and other similarly situated employees to under-report, or not report, hours worked in excess of forty hours per week, and did not pay them for all of the overtime hours that they worked. Dkt. 66, ¶¶ 62-65. Plaintiffs held various advertising sales positions at Angie's List to sell advertising to service providers on the Angie's List web site, and the vast majority of named Plaintiffs held the position of Advertising Sales Consultant in the Sales Originations Department during all or part of their employment with Angie's List. *See* Dkt. 76. The vast majority of the Named Plaintiffs were classified as nonexempt for purposes of the FLSA overtime provisions. *Id*. Regardless of the specific job title or classification status, Angie's List employees used Angie's List primary sales software, Sales Force, when completing sales with service providers. *See* Dkt. 40, ¶ 6. Sales Force provides client organizations, including Angie's List, with Customer Management Relationship software that allows client organizations to manage their business relationships and the data and information associated with those relationships. Ex. A, Declaration of Avanti Sardesai, on behalf of Sales Force, March 10, 2017. Sales Force regularly logs and maintains event records, which identify the dates and times that specific users of Sales Force's client organizations access Sales Force. *Id.* The logged events Sales Force maintains for Angie's List can be used to determine what activities a user performed in Sales Force and the date and time when those activities were performed. *Id*.

Angie's List asserts that all non-exempt Plaintiffs were compensated for all hours worked, as reported in Angie's List's timekeeping system, Time Tracker, including overtime hours when Plaintiffs reported them. Dkt. 34. Plaintiffs seek to use the Sales Force records in this litigation to prove that their Time Tracker records are wrong, and that they actually worked more hours than reflected in Time Tracker and more hours than Angie's List paid them to work.

Angie's List has admitted that an employee's time entries in Time Tracker could be manually adjusted. Dkt. 40, ¶ 6. Sales Force is not a time keeping program, but because the Time Tracker data is flawed due to the under-reporting or not reporting of hours worked, Plaintiffs need to cross reference other data points, including Sales Force, Interactive Intelligence, and ID Badge Swipes. If an employee's Sales Force log entries show time worked before their actual Time Tracker "clock in" time, after their actual Time Tracker "clock out" time, or on days when they have no hours reported in Time Tracker, this would prove that Angie's List failed to pay them for all hours worked.

A preliminary review of Sales Force data identifies significant chunks of time worked, but not reported in Time Tracker. For example, for the week of September 28, 2014 – October 4, 2014, Plaintiff Erin Burgess' Time Tracker records reflect 39.09 hours worked. Ex. B, Erin Burgess Time Tracker. This included zero hours on Sunday (Sept. 28), 10.15 hours on Monday (Sept. 29), 9.72 hours on Tuesday (Sept. 30), 7.97 hours on Wednesday (Oct. 1), 6.25 hours on Thursday (Oct. 2), 5 hours on Friday (Oct. 3), and zero hours on Saturday (Oct. 4). Data from Sales Force, on the other hand, shows that Burgess worked at almost all hours day and night that entire week, including Saturday and Sunday, for a total of over 160 hours worked that week:

| **Date:** | **First Activity Log in Sales Force** | **Last Activity Log in Sales Force** |
|---|---|---|
| September 28, 2014 | 12:01:12 a.m. | 11:55:56 p.m. |
| September 29, 2014 | 12:06:27 a.m. | 11:51:59 p.m. |
| September 30, 2014 | 12:12:58 a.m. | 11:51:13 p.m. |
| October 1, 2014 | 12:12:00 a.m. | 11:37:24 p.m. |
| October 2, 2014 | 12:08:55 a.m. | 11:52:23 p.m. |
| October 3, 2014 | 12:22:39 a.m. | 11:57:23 p.m. |

October 4, 2014          12:07:52 a.m.                    11:54:08 p.m.

Ex. C, Sales Force data, Erin Burgess, Sept. 28 – Oct. 4, 2014 (under seal).

      During that same week, Plaintiff Mike Browning's Time Tracker records reflect that he worked 40 hours that week (8 hours each day, Monday through Friday). Ex. D, Mike Browning Time Tracker. But the Sales Force activity logs for the same days show that he worked 10-14 hour days almost every day that week, for a total of almost 55 hours worked that week:

| **Date:** | **First Activity Log in Sales Force** | **Last Activity Log in Sales Force** |
| --- | --- | --- |
| September 29, 2014 | 7:13:03 a.m. | 6:52:19 p.m. |
| September 30, 2014 | 6:54:34 a.m. | 9:00:56 p.m. |
| October 1, 2014 | 6:44:18 a.m. | 5:22:51 p.m. |
| October 2, 2014 | 6:44:49 a.m. | 4:56:03 p.m. |
| October 3, 2014 | 7:19:21 a.m. | 3:28:28 p.m. |

Ex. E, Sales Force data, Mike Browning, Sept. 29-Oct. 3, 2014 (under seal).

      Even when Sales Force data does not show significant discrepancies with Time Tracker, the data remains useful. For example, for the week of September 22-26, 2014, Plaintiff Greg Nowlin's Time Tracker records reflect that he work 38.39 hours: 7.07 hours on Monday (Sept. 22), 8.23 hours on Tuesday (Sept. 23), 7.48 hours on Wednesday (Sept. 24), 7.98 hours on Thursday (Sept. 25), and 7.63 hours on Friday (Sept. 26). Ex. F, Greg Nowlin Time Tracker. His Sales Force activity logs during that week are mostly consistent with this (*i.e.*, within the hour), except on Friday, September 26, where his activity logs show more that he worked more than 10 hours (but Time Tracker only recorded 7.63 hours):

| Date: | First Activity Log in Sales Force | Last Activity Log in Sales Force |
|---|---|---|
| September 22, 2014 | 8:29:52 a.m. | 3:57:52 p.m. |
| September 23, 214 | 7:27:42 a.m. | 4:30:08 p.m. |
| September 24, 2014 | 8:31:33 a.m. | 4:30:08 p.m. |
| September 25, 2014 | 8:31:17 a.m. | 5:00:12 p.m. |
| **September 26, 2014** | **8:30:18 a.m.** | **6:39:02 p.m.** |

Ex. G, Sales Force data, Greg Nowlin, Sept. 22-26, 2014 (under seal). Thus, even where Sales Force data is mostly consistent with an employee's Time Tracker records, the discrepancies that do exist illustrate the times when Plaintiffs worked overtime hours, but did not get paid for it.

### B.   Background of Discovery Dispute Concerning Sales Force Records.

On March 21, 2016, prior to filing this lawsuit, Plaintiffs' counsel sent Angie's List a document preservation letter, requesting that Angie's List preserve, among other things, "All databases of Sales Force, including but not limited to all timed log in and log out information of Angie's List sales representatives, from January 1, 2013 to the present." Ex. H, Document Preservation Letter to Angie's List. Plaintiffs initially requested Sales Force records from Angie's List on June 15, 2016. Ex. I, Plaintiffs' First Requests for Production of Documents to Angie's List, Request No. 5. Plaintiffs requested Sales Force records from April 19, 2013, to the present. *Id*. On September 13, 2016, Angie's List objected to Plaintiffs' request for Sales Force records and produced no records. Ex. J, Defendant's Responses to Plaintiffs' First Requests for Production of Documents.

Plaintiffs' counsel wrote to counsel for Defendant on September 29, 2016, requesting supplementation of its discovery responses. Ex. K, Letter from DeLaney & DeLaney to Frost Brown Todd, Sept. 29, 2016. Counsel for Defendant responded on October 14, 2016. Ex. L,

Letter from Frost Brown Todd to DeLaney & DeLaney, Oct. 14, 2016. Counsel for the parties held telephonic meet and confer conferences on October 19, 2016, and October 26, 2016. During the call on October 26, 2016, Angie's List's counsel conceded that the Sales Force records contained the most useful data points for calculating overtime hours worked for each named Plaintiff. Ex. M, Letter from DeLaney & DeLaney to Frost Brown Todd, October 28, 2016. Counsel for Plaintiffs wrote a letter to counsel for Defendant on October 28, 2016, reiterating the request for Sales Force records following the meet and confer conferences. *Id*. Counsel for Defendant responded on November 1, 2016. Ex. N, Letter from Frost Brown Todd to DeLaney & DeLaney, November 1, 2016. Counsel for the parties held another meet and confer by telephone on November 4, 2016. Ex. O, Letter from Frost Brown Todd to DeLaney & DeLaney, November 4, 2016.

The Court held a Discovery Conference on November 9, 2016. Dkt. 67. The Court authorized the parties to file motions to compel. *Id*. However, on November 17, 2016, Angie's List agreed to produce one year of Sales Force data to Plaintiffs within 3 business days of receiving it from Sales Force. Ex. P, Letter from Frost Brown Todd to DeLaney & DeLaney, Nov. 17, 2016. Counsel for Angie's List said that they expected the production of this one year of data to be complete by mid-December. *Id.* On November 21, 2016, Counsel for Plaintiffs agreed to accept the Sales Force data from the time period of September 2014 to August 2015, but reserved "the right to file a motion to compel with respect to additional years of Sales Force data, including April 2013 to September 2014, and August 2015 to the present, but will agree to hold off on doing so until after we receive and evaluate the data that you have agreed to produce." Ex. Q, Letter from DeLaney & DeLaney to Frost Brown Todd, Nov. 21, 2016.

On January 24, 2017, after Angie's List had only produced a small amount of Sales Force data through that date, counsel for Plaintiffs requested an update on the status of Angie's List's Sales Force production. Ex. R, Letter from DeLaney & DeLaney to Frost Brown Todd, Jan. 24, 2017. Counsel for Defendant responded on February 27, 2017, estimating that production would be complete by mid-February. Ex. S, Letter from Frost Brown Todd to DeLaney & DeLaney, Jan. 27, 2017. On January 31, 2017, and February 7, 2017, counsel for Plaintiffs received Sales Force data from September 2014 to August 2015.

The Court held another Discovery Conference with counsel for the parties, in person, on February 21, 2017. Dkt. 91. At that conference, counsel for Plaintiffs requested Sales Force data for the remaining parts of the time period of their original request (*i.e.*, April 19, 2013, to August 31, 2014, and September 1, 2015, to the present). Counsel for Angie's List objected, claiming that Angie's List had incurred $15,000.00 in costs to obtain the Sales Force records from September 1, 2014 – August 31, 2015, and that it would cost an additional $30,000.00 to obtain the data for the remainder of Plaintiffs' requested time period. Counsel for Angie's List also objected that the requested discovery was not proportional to the needs of the case. The Court authorized Plaintiffs to file a Motion to Compel on this issue. Dkt. 91.

## II.    Argument

### A.    Legal Standard.

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a). A party objecting to the discovery request bears the burden of showing why the request is improper. *McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  The Court has broad discretion when deciding discovery matters. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014).

> **B.**     **The Court Should Compel Angie's List to Produce Sales Force Data from April 19, 2013, to August 31, 2014, and September 1, 2015, to the Present in Response to Request for Production No. 5.**

Plaintiffs' starting point for its request for the Sales Force data is based on the statute of limitations applicable to their claims. Claims for overtime compensation under the FLSA are subject to a three year statute of limitations, if the violation was willful. 29 U.S.C. § 255(a). The date of Plaintiffs' initial Complaint was April 19, 2016, meaning that Plaintiffs' overtime claims can reach as far back as April 19, 2013. Plaintiffs have not requested any Sales Force data outside of the applicable statute of limitations, even though many of them started working at Angie's List before this date.

Angie's List has produced Sales Force data from the time period of September 1, 2014, to August 31, 2015. Although the majority of Plaintiffs worked for Angie's List during all or part of this time period, all of the named Plaintiffs worked for Angie's List either: (a) before September 2014, (b) after August 2015, or (c) both. More data is necessary to calculate the full measure of all Plaintiffs' compensable damages.  In addition, three of the named Plaintiffs (Bob Thomas, Lisa Hensley, and Adam Gillam) have no Sales Force data from September 2014 to August 2015 because their employment with Angie's List ended before September 2014. Dkt. 66, ¶¶ 21, 23,

27. Similarly, the majority of named Plaintiffs worked for Angie's List beyond August 2015, including for example Eduardo Calderin, whose employment with Angie's List ended on October 5, 2016. Dkt. 66, ¶ 46. Thus, Plaintiffs seek data through at least October 5, 2016, in order to assist in calculating time worked by all Named Plaintiffs.

Angie's List cannot deny the relevance of the Sales Force data, because it has already produced one year's worth of the data. Angie's List has failed to explain, in the various meet-and-confers and Court-scheduled discovery conferences, why it was reasonable to produce one year of Sales Force data, but not the full time period requested. If the Sales Force records had no relevance at all, then Angie's List would have presumably refused to produce any Sales Force records. Angie's List has no principled basis for its position that the Sales Force data from September 2014 to August 2015 are relevant, but the data from the remaining time periods within the statute of limitations for Plaintiffs' claims are not.

In its attempt to justify withholding Sales Force data for two of the three requested years, Angie's List has alleged that it does not possess this data, but must obtain it from Sales Force. Angie's List claims that it spent $15,000.00 to obtain the Sales Force data that it did produce to Plaintiffs from September 2014 to August 2015, and estimates that it would cost it an additional $30,000.00 to produce the data for the remaining time periods.  Angie's List objects to production unless Plaintiffs agree to share in the costs.

Angie's List's argument for cost-sharing is apparently based on Fed. R. Civ. P. 26(b)(2)(B), which states:

> Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting

party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

"When addressing how to allocate costs associated with ESI, the district courts within this circuit have adopted an eight part test." *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 35673, No. 2:07-cv-3, *34 (N.D. Ind. March 19, 2014) (internal citations omitted). The factors to be considered are:

> 1) the likelihood of discovering critical information; 2) the availability of such information from other sources; 3) the amount in controversy as compared to the total cost of production; 4) the parties' resources as compared to the total cost of production; 5) the relative ability of each party to control costs and its incentive to do so; 6) the importance of the issues at stake in the litigation; 7) the importance of the requested discovery in resolving the issues at stake in the litigation; and 8) the relative benefits to the parties of obtaining the information.

*Id*. at 34-35. *See also Annex Books, Inc. v. City of Indianapolis*, 2012 U.S. Dist. LEXIS 34247, 1:03-cv-918-SEB-TAB, **7-8 (S.D. Ind. March 14, 2012); *EEOC v. SVT, LLC*, 2014 U.S. Dist. LEXIS 70848, No. 2:13-cv-245-RLM-PRC, *14 (N.D. Ind. May 22, 2014) (applying the same factors). In *Illiana*, the Court applied these eight factors, found that almost all of them weighed in Plaintiff's favor, and granted Plaintiff's motion to compel discovery against the Defendant, without requiring Plaintiff to share in the costs of production. 2014 U.S. Dist. LEXIS 35673 at **35-41. Similarly, these factors all weigh in favor of Plaintiffs, against Angie's List, and against cost-sharing.

### 1. The Likelihood of Discovering Critical Information Is High.

Based on the Sales Force data produced so far, Plaintiffs are confident that the missing information is critical to their claims. Although Angie's List has produced Time Tracker data for each Plaintiff, Plaintiffs' claims are based on allegations that their reported hours are not accurate. Plaintiffs intend to use the Sales Force data (among other data points) to rebut Angie's List's defense that it paid Plaintiffs all compensation earned for hours worked (including any

overtime compensation). In other words, if an employee remained logged into Sales Force (and still actively using Sales Force), during dates and times when no work hours were reported in Time Tracker, then that would show that the employee was working longer than the hours reported in Time Tracker. Although Plaintiffs requested data points from a variety of sources for this purpose (including, but not limited to, phone call logs via Interactive Intelligence, and ID badge swipes to enter the building), Angie's List's counsel suggested in meet-and-confers that Sales Force data would be the most useful in tracking time worked.  Plaintiffs' counsel have taken Angie's List's word for it, and, while not waiving their requests for alternative sources of data, have focused their primary discovery efforts on getting a timetable for production of Sales Force records.

Neither party views Sales Force as the be-all, end-all (*e.g.*, Plaintiffs claim that they worked hours, either at the office or remotely, when they were not logged in or performing activities on Sales Force, so they do not intend to rely solely on Sales Force to identify unreported hours worked), but the parties agree that the data available through Sales Force is better than what is available through alternative sources. Although Plaintiffs' counsel has only recently begun its review of the belatedly produced Sales Force data from September 2014 to August 2015, it is already apparent that Sales Force has comprehensive information to track an employee's work day due to individualized date, time, and user logs. The Sales Force data is in Excel format, and can be sorted for user, date, and time. The time span for activity logs in a day, the frequency of the entries, and the existence, or lack thereof, of "gaps" in the work day (such as during lunch hour) are helpful in reconstructing each Plaintiff's work day. Thus, the data produced so far have already shown that the Sales Force data contain critical information. For example, Plaintiff Erin Burgess apparently used Sales Force at all hours of the day and night

during the week of September 28, 2014 – October 4, 2014, but her Time Tracker records for that week show only 39.09 hours that week. Ex. B, Erin Burgess Time Tracker; Ex. C, Erin Burgess Sales Force (under seal). Plaintiff Mike Browning also worked almost 55 hours that week, but his Time Tracker records reflect only 40. Ex. D, Mike Browning Time Tracker; Ex. E, Mike Browning Sales Force (under seal). Angie's List did not pay Burgess or Browning any overtime compensation that week, even though they both worked a substantial number of overtime hours.

## 2.     The Sales Force Information Is Not Available from Other Sources.

This factor also weighs in Plaintiffs' favor. As addressed above, Plaintiffs also requested data from other sources, including Interactive Intelligence, ID Badge Swipes, and Time Tracker. Angie's List argued that, with the exception of Time Tracker, most of the information sought in Plaintiffs' discovery requests were either redundant of the Sales Force data, or useless altogether. While Plaintiffs do not intend to rely *exclusively* on Sales Force data, the volume and frequency of the logs are far more comprehensive than the other types of information and documents which Plaintiffs have obtained in discovery thus far. Angie's List has not identified any alternative source for the activity logs in Sales Force made by individuals at specific dates and times, other than Sales Force.

Nor can Angie's List argue that Plaintiffs are free to request the Sales Force data directly from Sales Force itself. Angie's List has an ongoing business relationship with Sales Force, and has been its customer since 2012. Ex. A, Sales Force Dec., ¶ 3.  Thus, if Sales Force is truly charging as much as it is to compile and produce the data, then Angie's List is in a much better position than Plaintiffs to negotiate that cost. In addition, to the extent that Angie's List has recent Sales Force data, Angie's List should produce it. At a minimum, Angie's List should have preserved or maintained possession of all Sales Force databases from March 21, 2016 (the date

of Plaintiffs' document preservation letter) to the present. If Angie's List does not have possession of this data, then it failed to preserve it after being placed on notice of this lawsuit and the relevance of that data.

### 3. The Amount in Controversy Far Exceeds the Cost of Production.

Angie's List has estimated the costs of production, for the remaining Sales Force data, at $30,000.00. Although the full extent of Plaintiffs' damages is not yet known, the cumulative total of Plaintiffs' claims will likely extend into the eight figures. Plaintiffs have requested conditional certification of a collective action, which, if granted, would give hundreds of current and former nonexempt advertising sales employees the opportunity to opt in to this lawsuit. At a minimum, 47 Plaintiffs are currently pursuing overtime claims against Angie's List, and their claims will proceed, irrespective of the ruling on conditional certification. The number of overtime hours worked per week, length of time worked, and hourly rates for each Plaintiff will vary. Many Named Plaintiffs worked at least 5-10 hours of overtime a week without receiving full pay for it, and in some cases more. Dkt. 16-4 (Thomas); Dkt. 76-3 (Yungwirth); Dkt. 76-4 (White); Dkt. 76-5 (Burgess); Dkt. 76-6 (Galbraith); Dkt. 76-7 (Arnold). Plaintiffs also received substantial compensation through bonus and commission, which should have been included when calculating their hourly rates for overtime. *See* Dkt. 46-1, Sherwood Aff., ¶ 13 (Jeff Barnard identified high commission payouts as reason for not paying overtime). Thus, the amount in controversy is expected to easily exceed the costs of production of the Sales Force data.

### 4. Angie's List's Resources Far Exceed the Named Plaintiffs' Resources.

Angie's List, as a large publicly traded company, has far more resources and ability to pay the costs of production than the individual Plaintiffs do. Plaintiffs are former employees of Angie's List, some of whom were terminated, and none of them have anywhere near the

resources of a major corporation. According to news reports, Angie's List has rejected bids to purchase the company in the hundreds of millions of dollars. Even when the 47 Plaintiffs are considered as a whole, their resources cannot reasonably equal to that of Angie's List.

   **5.      Angie's List Has More Ability and Incentive to Control Costs than Plaintiffs.**

   In consideration of this factor, Angie's List will likely rely on *EEOC v. SVT, LLC*, in which the Court stated, "[Defendant] has no ability to control the cost of data requested directly from Kronos in reports or formats that are not available to [Defendant] under its contract with Kronos." 2014 U.S. Dist. LEXIS 70848, at **17-18. However, Angie's List has not explained why its own data on its own employees is not available to them, and why it must pay Sales Force thousands of dollars to obtain this data. Sales Force and Angie's List have an ongoing client relationship.  Even if Angie's List's assertions are true, Plaintiffs have even less control over the data than Angie's List does, and would have no way of obtaining data from Sales Force at a more reasonable cost. Even if this factor weighs in favor of Angie's List, it is only slightly, and does not outweigh the other factors which favor Plaintiff.

   **6.      The Issue of the Actual Time Worked by Plaintiffs Is One of the Major Issues of Dispute Between the Parties in this Litigation.**

   With the exception of one or two Plaintiffs, Angie's List does not contest that Plaintiffs worked in non-exempt, overtime eligible positions at Angie's List, and, therefore, should have been paid for all overtime hours that they worked. Plaintiffs allege, and Angie's List disputes that, Angie's List failed to pay Plaintiffs all overtime pay earned, at full overtime rates, while they worked at Angie's List. While there are other elements of Plaintiffs' claim that will be disputed, the determination of actual time worked is a linchpin for the entire case. Simply put, in order to prove that they are owed overtime, Plaintiffs must prove that they earned overtime.

**7.      The Sales Force Data Is Important to Resolving the Issue of Plaintiffs' Time Worked.**

This factor is closely aligned with the previous factor. As addressed above, the Sales Force data is more useful than the alternative data points that could be used by the parties to prove or disprove Plaintiffs' hours worked.  If Sales Force data is produced for the full time periods at issue in the Complaint, then Plaintiffs can use that data to assist them in reconstructing their actual hours worked, as opposed to their recorded hours in Time Tracker, which Sales Force data shows to be inaccurate. *See* Ex. B, Erin Burgess Time Tracker; Ex. C, Erin Burgess Sales Force (under seal); Ex. D, Mike Browning Time Tracker; Ex. E, Mike Browning Sales Force (under seal).

**8.      The Sales Force Data Has the Potential to Benefit Both Parties.**

Plaintiffs are not seeking to obtain an unfair advantage over Angie's List. If Angie's List obtains and produces the Sales Force data for the remaining time periods, then, of course, it will be able to review and use the data to attempt to rebut Plaintiffs' claims for overtime pay, if possible. Although Plaintiffs' preliminary review of the one year of Sales Force data produced to date has supported their positions, Angie's List will be free to use the same data to attempt to draw whatever inferences it can to support its defenses. Until all three years of relevant data have been produced, nobody knows which side will benefit more from its production and use.

Taking all factors together, they clearly weigh in favor of Plaintiffs, and against Angie's List. Therefore, the Court should order Angie's List to produce all of the requested Sales Force data, at its own cost, without any sharing from Plaintiffs.

**III.   The Court Should Award Plaintiffs' Counsel their Reasonable Attorney's Fees Expended in Connection with their Attempts to Obtain Sales Force Records from Angie's List.**

If a motion to compel is granted, the Court may order the non-moving party to pay the reasonable expenses incurred in the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5). The Court should enter an order requiring Angie's List to pay Plaintiffs' reasonable attorneys' fees and expenses incurred in this motion. Plaintiffs' counsel has been fighting to obtain the Sales Force records from Angie's List since June 2016. This data has been the focal point of the discovery disputes between the parties over the last 8-9 months. Angie's List was not substantially justified in its position to produce one year's worth of Sales Force data, while withholding two other years' worth of relevant data. Plaintiffs request that, if their motion to compel and fee request are granted, the Court order them to file an itemized fee petition within fourteen days of the date of the Court's order.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order compelling Angie's List to produce Sales Force data in response to Request for Production No. 5 from April 19, 2013, to August 31, 2014, and September 1, 2015, to the present, for the reasonable attorney's fees and costs incurred in this Motion, and for all other just and proper relief.

Respectfully submitted,

   _/s/ Kathleen A. DeLaney_____
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
Attorneys for Plaintiff

DELANEY & DELANEY LLC
3646 N. Washington Boulevard
Indianapolis, IN  46205

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Amy Wilson
Jennifer Rulon
Neal Shah
Frost Brown Todd LLC
awilson@fbtlaw.com
jrulon@fbtlaw.com
nshah@fbtlaw.com

/s/ Kathleen A. DeLaney
Kathleen A. DeLaney

DeLaney & DeLaney LLC
3646 N. Washington Blvd.
Indianapolis, IN 46205

17