**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NICK WILLIAMS, et al., | ) | |
| On Behalf of Themselves and | ) | |
| All Others Similarly Situated, | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 1:16-cv-878-WTL-MJD |
| v. | ) | |
| | ) | |
| ANGIE'S LIST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ANGIE'S LIST, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL**

### I.   Introduction

The most reliable and relevant records in this case have already been produced: the Plaintiffs' own self-reported time records. Now, Plaintiffs seek to obtain additional data from non-party Salesforce through a Request for Production to Angie's List. The requested records are not within Angie's List's possession, custody, or control, and it will cost either party approximately $30,000.00 to obtain them. Moreover, the requested records – Salesforce background log data – do not show when the Plaintiffs were working. Indeed, the records[1] created by Plaintiffs and attached to their Motion to Compel ("Motion") show the unreliability of the Salesforce background log data. The Salesforce background log data do not reliably distinguish between automated and manual (user initiated) activity.  For example, the

---

[1] Plaintiffs failed to submit an authentic copy of the Salesforce background log data.  Rather, the records submitted by Plaintiffs appear to be a spreadsheet created by Plaintiffs that alters and deletes much of the data and columns contained in the Salesforce log data.  Plaintiffs deleted 26 columns from the Salesforce background log data – including all the columns that identify the log record type, the log name, the method name and all columns that could potentially identify automated or manual activity.  Rather, Plaintiffs' distorted records only list the time and date of activity – making the false assumption that all entries (including automated syncs) are compensable manual user generated activities.  Plaintiffs' distorted records are disingenuous and should be given no credence.  Instead, Angie's List has attached the relevant portion Erin Burgess' Salesforce background log data from Septembe 28, 2014 to October 4, 2014 as Exhibit A.

unreliability of the logs has lead Plaintiffs to the absurd conclusion that Plaintiff Erin Burgess worked more than 165 hours in a 168 hour workweek – not having more than 2.75 hours to sleep, eat, or perform personal tasks in a week. As Salesforce's representative has stated in an attached declaration, the background log data were never meant to be and are not reliable time keeping records. As a consequence, they provide limited to no probative value in this case and are subject to distortion. Because the requested records are outside of Angie's List control and more relevant and reliable records have been previously produced, Angie's List respectfully requests that the Court deny Plaintiffs' Motion to Compel, or in the alternative, order Plaintiffs to pay the cost of obtaining the requested discovery. Angie's List further requests that the Court award Angie's List its reasonable attorney's fees and costs Angie's List incurred in responding to Plaintiffs' Motion, and for all other just and proper relief.

## II.     Background

**A.     Facts Relevant to Discovery Dispute.**

Plaintiffs' lawsuit alleges that Angie's List did not pay overtime to Plaintiffs for all hours worked over 40 in a workweek. Plaintiffs initially filed a motion for conditional certification of a collective class but the Court denied Plaintiffs' motion. (Doc. 69). Plaintiffs have subsequently filed a renewed motion for conditional certification, which is currently pending before the Court.

The majority of the Plaintiffs were non-exempt employees who self-recorded their own time through Angie's List's timekeeping software, TimeTracker. (Doc. 43, ¶ 3). The Plaintiffs were trained and required to record their time worked accurately. (Doc. 39 ¶ 3; Doc. 40, ¶ 3; Doc. 81-5). Angie's List maintained written policies and training programs prohibiting all employees from falsifying time cards, understating or over overstating hours worked, prohibiting employees from working "off the clock," and requiring employees to notify their supervisor or

Payroll immediately if there was an error in their paycheck. (Doc. 39 ¶ 3; Doc. 40, ¶ 3; Doc. 81-5). It was Angie's List policy to pay non-exempt employees overtime for all hours worked over 40 in a workweek. (*Id.*) Indeed, the Plaintiffs recorded their overtime hours and were paid overtime rates for that time, including Plaintiffs Burgess, Browning and Nowlin. (*Id.*; Doc. 37). Additionally, none of the Sales Managers had the ability to revise or edit the Plaintiffs' self-reported time records. (Deposition of Craig Boas 30:4-11, attached as Exhibit B). Rather, the Plaintiffs had the ability to manually adjust and review their own time records. (Doc. 39 ¶ 6).

The time records central to this case – the Plaintiffs' self-reported TimeTracker timesheets – were already produced to Plaintiffs almost a year ago. These are the time records entered, reviewed, and submitted by the Plaintiffs themselves. These are the records on which the Plaintiffs were obligated to record all their hours worked accurately and without falsification. Once the Plaintiffs submitted their self-reported time records, Angie's List paid the Plaintiffs for all hours recorded – including overtime rates for overtime hours. (Doc. 37). There is no dispute in this case that Angie's List paid Plaintiffs for all hours reported by the Plaintiffs.

Because the Plaintiffs' self-reported time records undermine their case, the Plaintiffs have sought a variety of other, unreliable, non-timekeeping records to conjure a claim that the Plaintiffs worked more hours than they reported. In addition to the Interactive Intelligence, badge swipe records, and work calendars that Angie's List has agreed to produce, Plaintiffs also seek all third party background log data records from Angie's List's sales service platform, Salesforce.com, inc. ("Salesforce").

Angie's List operates a national local services consumer review service and marketplace where consumers can research, shop for, and purchase local services for critical needs, such as home, health, and automotive devices. (Doc. 35 ¶ 3.) This service allows consumers to rate and

review the service providers of these services across hundreds of markets in the United States. (*Id.*) Angie's List also works with various service providers to help them advertise on Angie's List's platform and connect to potential consumers. Some of the Plaintiffs' roles included selling advertising space to these service providers. To enhance their sales capabilities, Angie's List utilized a third-party sales platform from Salesforce. The Salesforce platform allowed Angie's List to manage its sales and business relationships and the data related to those sales and business relationships. (Declaration of Avanti Sardesai, "Sardesai Dec.", ¶ 2-3, attached as Exhibit C). Salesforce organized and kept records on Angie's List's progress on making sales and working with potential customers. As a by-product of Angie's List's attempt to monitor and follow its sales relationships, the Salesforce platform retains background log data of automated and manual user events/entries into the system. While Angie's List has access to its sales data and metrics from which it runs reports in the ordinary course of business, it must pay Salesforce an extra $15,000 for a report of the background log data requested by Plaintiffs for each year requested. (Invoice from Salesforce to Angie's List, attached as Exhibit D; Sardesai Dec. ¶ 3, 6).

The background log data is a background log regarding interactions with the Salesforce platform. (Sardesai Dec. ¶ 7). The activity generated in the report consists of both manual user activity and automated activity. (*Id.* ¶¶ 8-10). The automated activity is activity that is automatic and not generated by a user at that time. (*Id.*) Many of the activities captured by the background log data consists of automated activities. (*Id.*) For example, the event coded as "API" stands for Application Program Interface. (*Id.* ¶ 10). API allows two otherwise independent systems to interface with each other. (*Id.*) This is most often an automated process as two independent systems are interfacing automatically. (*Id.*) However, according to

4

Salesforce, the background log data does not reliably distinguish between manual user generated activity and automated activity. (*Id.* ¶¶ 9-15).

According to Salesforce personnel, the background log data sought by Plaintiffs was not and is not intended to be a timekeeping program. (*Id.* ¶ 7, 15). The proper timekeeping program utilized by Angie's List is TimeTracker. The Plaintiffs self-reported their time on TimeTracker and Angie's List produced the relevant TimeTracker records almost one year ago. Moreover, according to Salesforce, the background log data does not demonstrate when an employee was performing compensable work or not. (*Id.* ¶ 7, 14-15). The Salesforce background log data is not a reliable method to review a user's time worked because many of the entries do not distinguish between manual and automatic activities. (*Id.* ¶¶ 9-15). Thus, for many of the log items, one cannot tell whether the activity was manually initiated (e.g. possibly time worked by the employee) or automatic activity (e.g. not user generated and not time worked). (*Id.* ¶¶ 11-15.)

This inability to tell between automated activity and manual (user generated) activity is most glaring in Plaintiffs' Motion to Compel argument with respect to Erin Burgess. Burgess self-recorded working 39.09 hours for the workweek of September 28, 2014 through October 4, 2015. (Doc. 97-2). Burgess was not shy about recording her overtime hours as she was paid over $14,000 in overtime pay for 2015 alone and recorded working overtime for 45% of her workweeks in 2015 (22 out of a possible 49 complete workweeks). (Doc. 37, PageID 337; Doc. 43, PageID 562). In their Motion, Plaintiffs submitted their own distorted version of the Salesforce background log data – with almost all the columns and data deleted. Based on Plaintiffs' newly created record, Plaintiffs allege Burgess worked 165.75 hours out of a possible 168 hours from September 28, 2014 to October 2015. According to the Plaintiffs' distorted background log data, as interpreted by Plaintiffs, Burgess worked all but 2.25 hours in the

5

workweek. According to Plaintiffs, except for 2.25 hours, Burgess did not sleep, rest, or take time off to eat for the entire week of September 28, 2014 to October 4, 2014. Plaintiffs' argument is absurd on its face. Plaintiffs argument also directly contradicts Burgess' prior testimony in her declaration that she typically worked at most 25 hours of overtime – not 125 hours of overtime as alleged in Plaintiffs' newly created records. (Doc. 76-5). Plaintiffs' inability to distinguish in the background log data between the actual time worked by Burgess and the automated entries highlights how unreliable the Salesforce background log data is.

**B.      Background of Discovery Dispute Regarding Salesforce Records.**

In their discovery requests, Plaintiffs requested "All databases of Sales Force, including but not limited to all timed login and log out information of Plaintiffs" for three distinct cases, *Williams et al., v. Angie's List Inc.*, Case No. 1:16-cv-878-WTL-MJD; *Crabtree et al. v. Angie's List, Inc.*, Case No. 1:16-cv-877-SEB-MJD; and *Boillot v. Angie's List, Inc.*, Case No. 1:16-cv-1452-LJM-MJD. (Doc. 97-6). In all three cases, Angie's List objected to the requests as "not proportional to the needs of the case," "the burden and expense of the proposed discovery outweighs its likely benefits", and that "Salesforce is a third party and Defendant does not have possession, custody, or legal right to obtain the databases of Sales Force sought," among other objections. (Doc. 97-7). Essentially, Plaintiffs are requesting that Angie's List purchase from Salesforce a data dump of all background log data from which Angie's List does not run reports or have access to in the ordinary course of business. Then the parties would have to review each entry line by line. For example, for one week (September 28, 2014 – October 4, 2014) Burgess' background log data contains 859 line entries. Extrapolated over 47 plaintiffs for three years, review of the Salesforce background log data would require a line-by-line review of approximately 6,298,188 lines of data. Moreover, if a collective action is certified, this could

expand the review exponentially. But even after reviewing each entry line-by-line, according to Salesforce, one still could not determine whether each entry was user generated or automated – (e.g. whether it was compensable time or not). (Sardesai Dec. ¶¶ 11, 14-15). Simply put, Angie's List should not be required to pay for this extraordinary request from Plaintiff which has limited to no value and is superseded by more reliable and accurate time records recorded by the Plaintiffs themselves.

Despite Angie's List's objections to the necessity of the Salesforce background log data, Angie's List agreed to purchase and produce one year of Salesforce activity log data for all plaintiffs[2] as part of *Crabtree et al. v. Angie's List, Inc.*, Case No. 1:16-cv-877-SEB-MJD. (Doc. 97-11). Angie's List paid $15,000.00 to Salesforce to obtain these records. (Invoice, Ex. D; Sardesai Dec. ¶ 6.) Despite Angie's List's request that Plaintiffs cost share in Plaintiffs' requested data, Plaintiffs refused. (Doc. 97-11). Angie's List ultimately agreed to purchase the Salesforce activity log data in *Crabtree*, in part, because the *Crabtree* Plaintiffs were classified as exempt. As exempt employees, the *Crabtree* Plaintiffs did not record their time and there are no TimeTracker records for them. If the *Crabtree* Plaintiffs are found by the Court to be non-exempt, which Angie's List disputes, then the parties would have to reconstruct the *Crabtree* Plaintiffs' work time. Angie's List agreed to purchase the Salesforce records for the one-year period at issue in *Crabtree* to determine if the Salesforce background log data could be helpful in reconstructing the *Crabtree* Plaintiffs' work time in the absence of other more reliable records, like self-reported TimeTracker records. Angie's List also agreed to purchase the Salesforce background log data as an attempted compromise so that the parties could review the Salesforce background log records before producing Interactive Intelligence phone records and badge swipe

---

[2] Angie's List requested and produced background log data for all of the Plaintiffs in all three cases because it was included as part of the same cost as requesting the background log data on just the *Crabtree* plaintiffs.

records.  (Doc. 97-13; Doc. 97-14).  Unfortunately, before Plaintiffs even received or reviewed the Salesforce background log data, Plaintiffs rescinded the compromise and demanded that Angie's List go through the cost and expense of producing the Interactive Intelligence phone records and badge swipe records, in addition to the Salesforce background log data.  (Doc. 97-15).  Defendant ultimately produced Interactive Intelligence phone records and badge swipe records – a production that consisted of over 17,000 pages of documents.[3]  Nevertheless, upon review of the Salesforce background log data, as discussed above, the records do not distinguish between manual and automatic activities and are not reliable.  (Sardesai Dec. ¶ 9-15). They certainly are not as reliable as the Plaintiffs' own self-reported TimeTracker records already produced in this litigation.

### III. Argument

**A. Legal Standard.**

Federal Rule of Civil Procedure 37 permits a party to file a motion to compel responses to discovery requests if a party fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). Under Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The Court has "broad discretion in discovery matters." *Odongo v. City of Indianapolis*, No. 1:14-cv-00710-TWP-MJD, 2015 WL

---

[3] Angie's List is producing the Interactive Intelligence and badge swipe records for the *Williams* and *Boillot* Plaintiffs on the date of this filing per the parties' agreement. Plaintiffs have already received these records for the *Crabtree* Plaintiffs, as those records were produced on February 17, 2017.

420110 *1 (S.D. Ind. Jan. 30, 2015) (quoting *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001)).

**B.     Angie's List Does Not Have Possession, Custody, or a Legal Right to the Databases of Salesforce Sought in Plaintiff's Request for Production No. 5.**

"A party may serve on any other party a request within the scope of Rule 26(b) to produce . . . [documents] in the responding party's possession, custody, or control . . ." Fed. R. Civ. P. 34(a). "A party has control over a document amounting to possession for Rule 34 purposes when the party has a legal right to obtain the document." *Engel v. Town of Roseland*, 2007 WL 2903196 at *3 (N.D. Ind. Oct. 1, 2007), *citing McBryar v. Int'l Union of Implement Workers*, 160 F.R.D. 691 (S.D. Ind. 1993). *See also Glanton v. Tudor Ins. Co.*, No Civ. A 99-2181, 2000 WL 377818, at *1 (E.D. Penn. Mar. 28, 2000) (a party "need not produce documents outside of his possession or control"). For example, in *Chaveriat v. Williams Pipe Line Co.*, the plaintiffs hired a company to test soil samples. 11 F.3d 1420, 1423 (7th Cir. 1993). The company subjected the samples to "chromatographic analysis" and reported that the samples contained unleaded gasoline. *Id.* The plaintiffs did not receive a copy of the actual chromatograms from the company. *Id.* Consequently, when the defendants requested all documents reflecting contamination, the plaintiffs did not produce the chromatograms because they had never been in the plaintiffs' possession. *Id.* at 1424. The Seventh Circuit Court of Appeals applied Rule 34 and concluded that the plaintiffs did not have custody and control and the plaintiffs "could not order" the testing company to surrender the chromatograms. *Id.* at 1426. While the court even recognized that the "plaintiffs could no doubt have asked [the company] to give it the chromatograms" and if they had asked the company likely would have complied, the court found that was insufficient to constitute possession or control under Rule 34. *Id.* "[T]he fact that a party could obtain a document if it tried hard enough and maybe didn't try hard at all does not mean

that the document is in its possession, custody, or control; in fact it means the opposite." *Id.* at 1427. *Chaveriat* draws the line: it is not enough that the responding party *could* obtain or purchase a document if requested. The responding party must have control of the documents.

Here, Angie's List does not have possession, custody, control or a legal right to the Salesforce background log data requested by Plaintiff in the ordinary course of business. In fact, Angie's List has even less of an ability to request the data than the plaintiffs did in *Chaveriat*. 11 F.3d at 1427. Angie's List utilizes Salesforce for sales related purposes and has access to certain reports of sales information and metrics in the ordinary course of business. Angie's List does not in the ordinary course of business have access to the background log data requested by Plaintiffs. Angie's List would have to pay Salesforce $15,000 per year for the background log data requested by Plaintiff. (Invoice, Ex. D; Sardesai Dec. ¶ 6). As illustrated in *Chaveriat*, it is not enough that a party could purchase the records with the same right as the opposing party, but rather, it must have already had access to the records. 11 F.3d at 1427. Just like the Plaintiffs, Angie's List would have to pay approximately an additional $30,000 for two years of the Salesforce background log data requested. As demonstrated above, the unreliability of the background log data in determining the hours worked by the Plaintiffs – particularly when juxtaposed with the already produced self-recorded TimeTracker records – should lead to a determination that such background log records are not proportional to the needs of the case, are unduly burdensome, and are expensive and unnecessary.

**C.     Plaintiffs Should Pay the Cost of Obtaining Their Desired Records.**

"A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). A responding party may ask the court to protect it from "undue burden or

expense" by either restricting the discovery sought or by shifting the costs to the nonproducing party. *Clean Harbors Envtl. Servs. v. ESIS, Inc.*, No. 09-C-3789, 2011 WL 1897213 at *2 (N.D. Ill. May 17, 2011). *See also Annex Books, Inc. v. City of Indianapolis*, No. 1:03-cv-918-SEB-TAB, 2012 WL 892170 at *2-3 (S.D. Ind. Mar. 14, 2012). "Generally, cost shifting is appropriate when data is inaccessible." *Annex Books, Inc.*, 2012 WL 892170 at *2-3. "If the information sought is not reasonably available to the responding party in the ordinary course of business, then, absent special circumstances, the costs of retrieving and reviewing such electronic information may be shared or shifted to the requesting party." The Sedona Principles: Second Edition, June 2007 (Principle 13). Within the Seventh Circuit, district courts use an eight-factor test to determine when it is appropriate to shift costs for seemingly inaccessible data. *Annex Books, Inc.*, 2012 WL 892170 at *2-3. The eight-factor tests address: (1) the likelihood of discovering critical information from the requested documents; (2) the availability of such information from other sources; (3) the amount in controversy as compared to the total cost of production; (4) the parties' resources as compared to the total cost of production; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; (7) the importance of the requested discovery in resolving the issues at stake in the litigation; and (8) the relative benefits to the parties of obtaining the information. *Id.* (citing *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 573 (N.D. Ill. 2004)).

For example, in *EEOC v. SVT, LLC*, the EEOC sought data that the employer did not have access to within its contract with a third party. No. 2:13-cv-245-RLM-PRC, 2014 WL 2177796 (N.D. Ind. May 22, 2014). The third party represented that it would cost a set amount of $23,500 for the employer to obtain the records. The court stated, "As to the relative ability of each party to control costs and its incentive to do so, [the employer] has no ability to control the

11

cost of data requested directly from [the third party] in reports or formats that are not available to [the employer] under its contract with [the third party]." *Id.* at *7. After applying the eight-factor test, the court concluded, "if the EEOC wishes to obtain the data directly from [the third party] . . . at the estimated cost of $23,500, the EEOC will have to pay the cost for the discovery." *Id*. As in *EEOC v. SVT, LLC*, because more factors point toward cost-shifting in this case, the Court should require Plaintiffs to pay the cost to obtain the additional Salesforce background log data.

### 1. There is a low likelihood of discovery of critical information from the requested documents.

As discussed above, Angie's List has already produced the most relevant information related to the time worked by the Plaintiffs – their own self-reported time records. The TimeTracker records are the Plaintiffs own statements, submitted to Angie's List, of their hours worked. Although the Plaintiffs allege they were instructed not to record overtime, their timesheets contradict that assertion as they often recorded, and were paid for, overtime. For example, Erin Burgess recorded working overtime on 22 of 49 complete workweeks in 2015 and was paid more than $14,000 in overtime for that time. (Doc. 37, PageID 337; Doc. 43, PageID 562). Lead Plaintiff Nick Williams recorded and was paid for more than $38,000 in overtime in 2015 alone. (Doc. 37, Page ID 338). Furthermore, the Sales Managers did not have the ability to edit or revise the Plaintiffs' timesheets – the Plaintiffs did. (Craig Boas Dep. 30:4-11).

Notwithstanding the fact that Angie's List has already produced the Plaintiffs' self-reported time records, the Salesforce background log data is not reliable and will not lead to the discovery of accurate information. As discussed above, Salesforce's representative admits that the background log data does not provide a reliable record of time worked and on many of the entries, one cannot distinguish between automated activities and manual user generated activities. (Sardesai Dec. ¶¶ 7, 11-15). Indeed, Plaintiffs' review of the records demonstrates this

point as they could not distinguish between automatic and manual (user generated) entries. Because Plaintiffs cannot distinguish between manual and automatic entries they interpret Erin Burgess' background log data to mean that from at least September 28, 2014 to October 4, 2014 Burgess failed to sleep for the entire week and worked almost every possible minute of the week. Such an assertion is absurd on its face and proves how unreliable the Salesforce background log data is. It certainly is not more reliable than the Plaintiffs' own self-reported time records. Moreover, Angie's List has also produced the Plaintiffs' Interactive Intelligence records (which contain the dates and times of the Plaintiffs' telephone calls) and the Plaintiffs' badge swipe records (which state when the Plaintiffs swiped in to enter the office) and has agreed to produce the Plaintiffs' work calendars.

Rather, it appears the purpose of Plaintiffs' request is not to rely on the most reliable time records, but to confuse the issue. It is undisputed that the TimeTracker records produced in this case are the Plaintiffs' self-reported time records. However, because those self-reported time records are not favorable to Plaintiffs' claims, Plaintiffs are attempting to obfuscate the issue and cast doubt upon the TimeTracker records by relying on unreliable Salesforce background log data to argue that some Plaintiffs worked nearly every single minute of every day. Indeed, in the distorted records submitted by Plaintiffs in support of their Motion, purporting to be the Salesforce background log data, Plaintiffs deleted almost all of the columns of data and all data that may indicate whether the time entry was automated. Such tactics are prejudicial and not likely to lead to admissible evidence. Moreover, Angie's List should not be forced to bear the burden and cost of purchasing such patently unreliable data.

      **2.    Similar and more reliable information is available from other sources, and that similar information has already been produced by Angie's List.**

The most reliable evidence of the time Plaintiffs worked are their self-reported TimeTracker time records. These are the time records reported, reviewed and submitted by the Plaintiffs themselves. (Doc. 43, ¶ 3). None of the Sales Managers had the ability to revise or edit these self-reported time records. (Boas Dep. 30:4-11). The Plaintiffs were trained and required to record their time worked accurately. (Doc. 39 ¶ 3; Doc. 40, ¶ 3; Doc. 81-5). The Plaintiffs were prohibited from falsifying these time records, understating or over stating hours worked, or working "off the clock." (Doc. 39 ¶ 3; Doc. 40, ¶ 3; Doc. 81-5). Angie's List has already produced the TimeTracker records for all Plaintiffs.

Additionally, Angie's List has produced Interactive Intelligence and badge swipe records for all Plaintiffs and has agreed to produce the work calendars of the Plaintiffs. The Interactive Intelligence data shows when each Plaintiff made calls on his or her work phone. The badge swipe records provide information about when the Plaintiffs swiped their security badges to get into the building. Because the most reliable time records – the Plaintiffs' self-reported TimeTracker records[4] – have already been produced, along with the Interactive Intelligence, badge swipe records and work calendars, this factor weighs in favor of Plaintiffs paying the cost to obtain the Salesforce records.

      **3.    The amount in controversy is unknown.**

Plaintiffs have not yet provided any damages calculation or made any settlement demand to Angie's List.

---

[4] In their Motion, Plaintiffs falsely argue that Angie's List somehow conceded that the Salesforce background log data was the most useful data for tracking the Plaintiffs' time. This is untrue and belied by the complete lack of reliability of the Salesforce records as discussed above. Rather, Angie's List agreed to review the Salesforce background log data first in the *Crabtree* matter to determine if they could provide reliable information. As discussed above, the Salesforce background log data does not provide reliable information for determining when an individual worked or did not work. Moreover, it is clear that in the *Williams* case the most reliable and accurate time records are the Plaintiffs' TimeTracker records - because they were created by the Plaintiffs themselves.

    **4.    Angie's List has already expended significant resources on discovery, and the total cost of additional production would be an undue burden.**

Angie's List has now produced over 150,000 pages of documents in this case, and will be reviewing and producing additional documents in response to Plaintiffs' Third Request for Production of Documents. Conversely, the forty-seven plaintiffs have produced only 1,014 pages of documents. Angie's List has incurred significant fees in reviewing and producing these documents in a good faith effort to respond to Plaintiffs' discovery requests. Angie's List has also produced all of the Plaintiffs' self-reported timesheets. Requiring Angie's List to pay approximately an additional $30,000 to obtain unreliable and unusable Salesforce background log data would be an undue burden and not proportional to the needs of the case.

Additionally, the Plaintiffs consist of 47 well-compensated former employees. For example, lead Plaintiff Nick Williams was paid over $38,000 in overtime for 2015 alone. (Doc. 37, Page ID 338). Plaintiffs have also filed a renewed motion for conditional certification of a collective action. This is not a typical single plaintiff employment lawsuit. If the Plaintiffs truly believe the Salesforce background log data is probative, they have the resources to purchase the records themselves.

    **5.    Each party has the same ability and incentive to control costs.**

Both Angie's List and Plaintiffs have the same ability and incentive to control costs in this litigation, and both Angie's List and Plaintiffs would spend the same amount for the Salesforce records: approximately $30,000. Here, as in *EEOC v. SVT, LLC*, the requested data is not available to Angie's List and Salesforce has represented that it will cost approximately $30,000 to obtain the additional records. Just as in *EEOC v. SVT, LLC*, the parties have the same ability and incentive to control costs because the cost will be the same to either party. The Court should order that Plaintiffs pay the cost of obtaining the records. *Id.*

> **6.     The issue of the time worked by Plaintiffs is the main area of dispute in this litigation, however, this issue is resolved through reviewing other records that have already been produced.**

While the determination of time worked is the main area of dispute in this litigation, Plaintiffs submitted their own self-reported time records to Angie's List. The Plaintiffs' TimeTracker records are the most reliable indicator of when the Plaintiffs worked because the Plaintiffs self-reported their time. The TimeTracker records are the only system that was designed to capture and record an employee's work time. Conversely, the Salesforce background log data were not designed to capture an employee's work time and do not distinguish at many points between automated time (which is not worked by an employee) and manual time (which can be user generated). (Sardesai Dec. ¶¶ 7-15). Additionally, Angie's List has produced the Interactive Intelligence phone records for each Plaintiff, which show the times that Plaintiffs made calls at work, and the badge swipe records for each time Plaintiffs badged into the building. As such, documentation of Plaintiffs' time spent working has already been produced.

> **7.     The requested discovery will not resolve the issues at stake in this litigation.**

As illustrated above, the Salesforce background log data does not aid the trier of fact in determining how many hours the Plaintiffs worked. To the contrary, the Salesforce background log data appears to confuse the issues central to the case because one cannot distinguish between automated and manual activity. (Sardesai Dec. ¶¶ 7-15). One cannot determine whether the data recorded was entered because of a Plaintiff's activity (and thus theoretically was time worked by a Plaintiff) or was an automated function that reflects no user work at all. (*Id.*) Indiscriminately adding all of this manual and automated activity together has led the Plaintiffs to the nonrealistic conclusion that Erin Burgess worked 165.75 hours out of a possible 168 hours from September 28, 2014 to October 2015 – leaving only 2.25 hours to sleep, eat, rest and tend to personal

16

matters. This Salesforce background log data will not lead to an orderly and logical resolution of the disputed facts.

Conversely, the most reliable indicia of the Plaintiffs' time worked has already been produced – the Plaintiffs' self-reported TimeTracker records. To the extent Plaintiffs wish to cross-check those records, they can do so via the production of Interactive Intelligence records, badge swipe records, and work calendars. The Salesforce background log data does not provide reliable data central to this case.

### 8. There is little benefit to the parties in obtaining the information.

Again, as demonstrated by the analysis of Burgess' Salesforce background log data, there is little to no benefit in obtaining these records for the remaining period. The background log data is patently unreliable.

Taking all these factors together, they weigh in favor of shifting the cost of obtaining the additional Salesforce activity logs to Plaintiffs.

### IV. Conclusion

For the foregoing reasons, Angie's List respectfully requests that the Court deny Plaintiffs' Motion to Compel, or in the alternative, order Plaintiffs to pay the cost of obtaining the requested discovery. Angie's List further requests that the Court award Angie's List its reasonable attorney's fees and costs Angie's List incurred in responding to Plaintiffs' Motion, and for all other just and proper relief.

    Respectfully submitted,

    FROST BROWN TODD LLC

    By:   */s/ Amy S. Wilson*
            Amy S. Wilson, #24184-49
            Jennifer A. Rulon, #32131-53
            Neal Shah *(admitted pro hac vice)*

*Attorneys for Defendant, Angie's List, Inc.*

FROST BROWN TODD LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
Phone: 317-237-3800
Fax: 317-237-3900
awilson@fbtlaw.com
jrulon@fbtlaw.com

FROST BROWN TODD LLC
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202
Phone: 513-651-6741
Fax: 513-651-6981
NShah@fbtlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 24, 2017, a copy of the foregoing Defendant's Response in Opposition to Plaintiffs' Motion to Compel was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Christopher S. Stake
Kathleen Ann DeLaney
DELANEY & DELANEY LLC
cstake@delaneylaw.net
kathleen@delaneylaw.net

                                            */s/ Amy S. Wilson*
                                            Amy S. Wilson

FROST BROWN TODD LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
Phone: 317-237-3800
Fax: 317-237-3900
awilson@fbtlaw.com
jrulon@fbtlaw.com

Neal Shah, *(admitted pro hac vice)*
FROST BROWN TODD LLC
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202
Phone: 513-651-6741
Fax: 513-651-6981
NShah@fbtlaw.com

0123993.0636922 4825-7625-8629v5