IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICK WILLIAMS, *et al.*, ) <br> On Behalf of Themselves and ) <br> All Others Similarly Situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ANGIE'S LIST, INC., ) <br> ) <br> Defendant. ) | CAUSE NO. 1:16-cv-878-WTL-MJD |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL**

Plaintiffs, by counsel, file their Reply in Support of their Motion to Compel (Dkt. 95).

**I.   Introduction**

Throughout the meet-and-confer process with Angie's List to resolve the parties' discovery disputes, Plaintiffs' counsel relied upon the representations of Angie's List's counsel that Salesforce background log data would be a more useful source of information for calculating hours worked than other types of data and information requested by Plaintiffs (including, but not limited to, Interactive Intelligence and ID badge swipe data). As a result, Plaintiffs' counsel focused primarily on obtaining Salesforce records from Angie's List in discovery conferences, rather than the alternative sources of data that were also the subject of discovery disputes. In opposing Plaintiffs' Motion to Compel, Angie's List now attempts to run away from its earlier representations. Angie's List has already produced one year of Salesforce background log data, which amounts to a concession that (i) the data is within Angie's List's control; (ii) the cost of obtaining the data should be borne by Angie's List; and (iii) the data is relevant. The one year of data produced to date provides relevant information regarding Plaintiffs' logged entries in

Salesforce (which confirms time that they were working). Even if, as Angie's List claims, the Salesforce logs include both "manual user activity and automated activity," the Salesforce logs contain information that is not available from any other source (such as time when Angie's List employees used Salesforce from home), provides evidence that Plaintiffs were working on dates and times when they were not compensated for that work, and the possibility that automated activities were also logged, possibly at times when Plaintiffs were not working does little to detract from the data's overall relevance.

In Angie's List's original production of Salesforce logs to Plaintiffs, the times and users for each log were produced in unreadable formats. *See* Dkt. 104-2. In order to review the logs, Plaintiffs' counsel converted the time of each log entry from Greenwich Mean Time (GMT) to Eastern Standard Time (EST), and changed the "user id" from a unique identifying number linked to an employee of Angie's List to the name of each Plaintiff in accordance with the list of "user ids" produced by Angie's List. Dkt. 98-2, 98-3, 98-4; *See also* Dkt. 100, Sardesi Dec., ¶ 10(a), (d). In the records Plaintiffs filed with the Court under seal, the third and fourth columns from the left identify the GMT date and time, and the fifth and sixth columns from the left identify the EST date and time. Dkt. 98-2, 98-3, 98-4. Plaintiffs' counsel has not "distorted" any of the data contained within the logs to change or manipulate any data, but only filed those portions of the Salesforce data that it believed to be relevant for purposes of this motion – *i.e.*, the time entry and user id for each log. Moreover, Angie's List has invited Plaintiffs' counsel to remove one column (designated as Attorneys' Eyes Only) from the Salesforce logs in order to share them with their clients.[1]

---

[1] Angie's List initially designated all of the Salesforce logs as "Attorneys' Eyes Only." Plaintiffs challenged this designation. In response, Angie's List stated that only one column of the Salesforce logs needed to be maintained as "Attorneys' Eyes Only." Plaintiffs' counsel requested redacted copies of the Salesforce records so that they could share with their clients. Ex. T, Letter from DeLaney & DeLaney LLC to Frost Brown Todd, March 29, 2017.

Angie's List claims that the example of Erin Burgess's Salesforce log entries from September 28 – October 4, 2014, shows that the data is not reliable. But the Salesforce data, as a whole, typically do not show log entries running all day and all night, as it does for Burgess on this particular week. Burgess's situation is unique because she has a sleep condition that makes it difficult for her to sleep regularly through the night, and it was not uncommon for her to work through an entire night, or series of nights, including during end of month closes. Ex. U, Affidavit of Erin Burgess, March 31, 2017, ¶ 4. Plaintiffs attached other examples where the Salesforce logs show a pattern of working a more reasonable and manageable schedule (*i.e.*, Mike Browning and Greg Nowlin). *See* Dkt. 98-3 (Browning), 98-4 (Nowlin). Angie's List ignores these Plaintiffs' examples of Salesforce logs, and focuses only on those for Burgess. Burgess has a reasonable and valid explanation as to why she worked all night. Ex. U, Burgess Dec., ¶ 4. It is precisely because the Salesforce logs show so many entries for Burgess that week (but not for other Plaintiffs or at other times) that more must data be obtained. If Angie's List intends to defend Plaintiffs' claims in this case by relying on Plaintiffs' Time Tracker records, then Plaintiffs must obtain discovery of sources of data that can be used to rebut those records. The most complete source of data is Salesforce.

## II. Argument

### A. Angie's List's Selective Production of One Year of Salesforce Records Undermines its Argument that it has No "Possession, Custody or Control" of the Other Two Years of Relevant and Requested Salesforce Records.

In opposing the Motion to Compel, Angie's List argues that it has no "possession, custody, or control" of the records Plaintiffs have requested. Relying on dicta from *Chaveriat v. Williams Pipeline Company*, Angie's List claims that it is under no obligation to produce

---

Defendant's counsel responded that Plaintiffs' counsel could simply "delete or hide" the column in question in the records to show the clients. Ex. V, Email from Jenny Rulon to Christopher Stake, March 29, 2017.

documents that it "could obtain." 11 F.3d 1420, 1426-27 (7th Cir. 1993). *Chaveriat* did not involve the appeal of a discovery dispute, and the Seventh Circuit affirmed the ruling against Plaintiffs in that case despite the fact that it found that Plaintiff did not violate Rule 34. *Id*.

United States District Courts in Indiana have clarified in recent years that documents may be within a party's control, even if that party does not have possession. For example, in *Engel v. Town of Roseland*, the Court stated "*Chaveriat* does not absolve a party from making an effort to obtain documents in a third party's hands," and found that the Defendants were in control of "at least some of the documents [Plaintiff] seeks," even though the Defendants did not physically possess them. No. 3:06-cv-430-JTM, 2007 U.S. Dist. LEXIS 49373, **5-8 (N.D. Ind. July 6, 2007). Similarly, in *Symons International Group, Inc. v. Continental Casualty Company*, the Court said, "the prevailing rule is that a 'party does not have to actually possess the requested documents to be in control of them.'" No. 1:01-cv-00799-RLY-MJD, 2015 U.S. Dist. LEXIS 91785, *19 (S.D. Ind. July 15, 2015) (citing *Engel*) (*vacated on other grounds*, 2016 U.S. Dist. LEXIS 72511 (S.D. Ind. June 3, 2016)). "[T]he test is whether the party has a legal right to control or obtain the documents." *Symons*, 2015 U.S. Dist. LEXIS at *19. The Court ordered the party opposing the discovery to produce copies of tax returns and financial statements, or to contact financial institutions that may have these records in order to "make a good faith and reasonable effort to obtain those records from those financial institutions." *Id*. at **20-22.

Angie's List argues that it does not have "control or a legal right to" the Salesforce background log data. However, this claim is undermined by the fact that it has already *requested and obtained* Salesforce background log data from Salesforce from September 2014 to August 2015 and produced them to Plaintiffs in this litigation. If Angie's List requests data from Salesforce for additional time periods, Salesforce will comply with its customer's request.

4

Angie's List has an ongoing business relationship with Salesforce and Angie's List does not dispute that it has access to certain reports of sales information and metrics in the ordinary course of business. Angie's List produced an invoice from Salesforce, but no evidence that Angie's List actually paid the invoice. Angie's List argues that it cost $15,000.00 to obtain the one year of Salesforce data, and claims that it would cost an additional $30,000.00 to obtain an additional two years of data. The sheer cost of the data does not remove the Salesforce data from the scope of Angie's List's control. Angie's List ignores the fact that it is in the best position to negotiate with Salesforce due to their ongoing business relationship, and has been successful in those negotiations to date. Although Angie's List claims that it would cost the same amount for both parties to obtain data from Salesforce, Angie's List has represented that it was able to negotiate the cost of one year of data from $90,000.00 down to $15,000.00. Dkt. 97-11. There is no guarantee that Plaintiffs would be able to obtain the Salesforce data at the cost negotiated by Angie's List, if they are forced to request the data directly from Salesforce at their own cost. Moreover, it is not even clear whether Salesforce would produce the data (at any cost) to parties with whom it has no current or past business relationship.

Angie's List argues not that it has no legal right to control or access the Salesforce data, but instead that it would be too expensive to do so. This argument is best evaluated under Rule 26(b)(2)(B), which governs circumstances where information is "not reasonably accessible because of undue burden or cost." Fed. R. Civ. Pro. 26(b)(2)(B). Both parties have argued why the costs of production should be borne by the other party under this Rule.

### B. Angie's List Should Pay the Costs of Obtaining the Records Because the Eight Cost-Sharing Factors Weigh against It.

When evaluating the allocation of the costs of production of ESI, the parties agree that the Court should apply the same eight factors as those applied in prior cases within this District

5

and others. *See, e.g., Annex Books, Inc. v. City of Indianapolis*, 1:03-cv-918-SEB-TAB, 2012 U.S. Dist. LEXIS 342247, \*\*7-8 (S.D. Ind. March 14, 2012); *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07-cv-3, 2014 U.S. Dist. LEXIS 35673, \*34 (N.D. Ind. March 19, 2014); *EEOC v. SVT LLC*, No. 2:13-cv-245-RLM-PRC, 2014 U.S. Dist. LEXIS 70848, \*14 (N.D. Ind. May 22, 2014). As Plaintiffs argued on their initial motion and brief, and reiterate here, each factor weighs in their favor, and against Angie's List.

### 1.    The Likelihood of Discovering Critical Information Is High.

Angie's List argues that "the most relevant information related to the time worked by the Plaintiffs" are the Plaintiffs' Time Tracker records. Plaintiffs have made no secret of the fact that they believe that their work hours, as reported in Time Tracker, are wrong – their claims are that they were instructed, by their managers and others, to under-report their hours, and that, if they had been permitted to accurately report their hours, they would have been paid more overtime compensation than they receive. *See* Dkt. 108, ¶¶ 62-66.  Angie's List cannot rely solely on the Time Tracker records to defend Plaintiffs' claims, because Plaintiffs have already alleged that these reports are not accurate. For example, the Time Tracker report for Cody Boillot (who is a Plaintiff in a separate case) shows no time *at all* reported in Time Tracker between November 11, 2013, and March 10, 2014, but Boillot testified that he recorded his time during that gap. Ex. W, Deposition of Cody Boillot, 274:15-275:23.  Nor can Angie's List argue that its payment of overtime to certain Plaintiffs at certain times proves that it paid all Plaintiffs all of the overtime compensation that they earned. Plaintiffs have not alleged that Angie's List never paid them any overtime – they have alleged that Angie's List has not paid them for every overtime hour that they worked. Similarly, Angie's List's assertion that Sales Managers could not edit or revise Plaintiffs' timesheets is a red herring – Plaintiffs have alleged that they were instructed to under-

report their hours, not that anyone altered their timesheets after they submitted them. Time Tracker was not a true "time clock," but time could be entered weekly and edited until submitted.

In order to rebut the Time Tracker records, Plaintiffs have focused their discovery on alternative sources of data and information, the most comprehensive of which is Salesforce. In support of their Motion to Compel, Plaintiffs submitted a declaration from an employee of Salesforce, Avanti Sardesai, which said that "the logged events Salesforce maintains for Angie's List Users can be used, among other things, to determine what activities an Angie's List user performed in Salesforce and the date and time when those activities were performed." Dkt. 100, ¶ 13. Angie's List submitted another declaration from Sardesai, which it uses to attempt to argue that the Salesforce logs are not reliable in tracking Plaintiff's work hours. Dkt. 103-2. In the second declaration, dated March 24, 2017, Sardesai claims that some log entries are automated activity and others are manual user activity." *Id*. at 7. Sardesai also claims that "certain events in the log data at issue would not provide a reliable record of a user's time spent using the Salesforce platform." *Id*. at 15.

Sardesai does not attempt to explain the discrepancies between her first declaration and the second one. However, even if the Salesforce logs contain automated entries, that does not mean that the records have no relevance or reliability. Importantly, Sardesai's supplemental declaration does not state that *all* of the Salesforce logs are unreliable – she merely states that "*certain events in the log data at issue* would not provide a reliable record of a user's time." *Id*. Just because some log entries may not confirm hours worked does nothing to refute the fact that the logs confirm the dates and times of manual activities done by Plaintiffs in Salesforce. There is no reason to throw out the champagne with the cork.

7

After months of delays from Angie's List in producing any records other than Time Tracker, on the purported grounds that Salesforce would be the best information, Angie's List presumably would have attempted to argue, in defense of the claims, that the Salesforce data was mostly consistent with the Time Tracker records for each Plaintiff. Instead, Angie's List now has gone all in on a completely opposite approach – *i.e.*, that the Salesforce data shows *too large* of a gap between Time Tracker hours and its logs to be considered credible. Angie's List claims that the Salesforce logs are not reliable because the example of Erin Burgess records for one week at the end of one month show more hours than she could have possibly worked. Dkt. 98-2. The Erin Burgess example, which was for one Plaintiff and one week, was not intended to represent the norm, and presents unusual circumstances. Ex. U, Burgess Dec., ¶ 4. If Angie's List's new theory were true, then one would expect to find a pattern of automated activity logged repeatedly, continuously, and at all hours of the night across various time periods and users. That is not the case, as is shown by the examples Plaintiffs cited to Mike Browning and Greg Nowlin's activity logs. Dkt. 98-3, 98-4. Angie's List ignores this evidence in responding to Plaintiff's Motion to Compel. There is simply no evidence that automatically initiated activity occurs frequently and consistently while users are offline.

### 2. Salesforce Data Contains Information Not Available from Other Sources.

Angie's List argues that because it has produced other data, such as Interactive Intelligence, ID badge swipe records, and to be produced work calendars, that the Salesforce information is available from other sources. While the Salesforce data can certainly be cross-referenced with these other data points, Salesforce contains more data from these alternative sources. The ID badge swipe data, for example, only shows when an employee swiped in to a building or walked stairs from one floor to another within a building. The Interactive Intelligence

8

records do not identify any work activities other than sales calls, and do not include any work that an employee performed outside of the Angie's List business premises. On the other hand, employees were able to log into Salesforce and work from home. Work calendars may show dates and times of appointments outside of normal business hours, but Salesforce logs would verify the amount of time spent working relating to those appointments. The alternative sources of data are best considered together to reconstruct the Plaintiffs' actual, compensable work hours. The omission of any source will prevent the parties from seeing the full picture.

### 3. The Amount in Controversy Far Exceeds the Cost of Production.

Angie's List does not contest this factor except to say that Plaintiffs have not provided a damages calculation or made a settlement demand to Angie's List yet. Plaintiffs cannot readily calculate their exact amounts of damages at this time, which is precisely why they are pushing to obtain all of the relevant Salesforce records. "When a defendant's own wrongful conduct creates uncertainty as to the exact amount of damages, the defendant will not be heard to complain of that uncertainty." *Koppers Co. v. Inland Steel Co.*, 498 N.E.2d 1247, 1254 (Ind. Ct. App. 1986). Angie's List created the uncertainty by consistently and systematically instructing employees to not report or under-report overtime hours, rendering their Time Tracker records flawed for under-reporting hours. Angie's List used a Time Tracker system which was subject to manipulation and which did not track hours worked in real time. It also decoupled payroll from Time Tracker so that Time Tracker records were not required for payroll to issue. For example, Boillot has a four month gap in his Time Tracker records. Ex. W, Boillot Dep., 274:15-275:23. Ed Sherman, a former Senior Director of Sales Origination at Angie's List, testified that he is not aware of anyone being disciplined or terminated for not submitting Time Tracker reports weekly or any other overtime issues. Ex. X, Deposition of Ed Sherman, 6:23-7:1, 78:15-18, 159:15-17.

Angie's List cannot now complain that Plaintiffs do not know their precise amount of damages, and deny to produce records that could help calculate their work hours and damages.

### 4. Angie's List's Resources Far Exceed the Plaintiffs' Resources.

Angie's List does not dispute that their resources exceed the Plaintiffs' resources, but argues that it has already expended significant effort and legal fees producing other discovery in this case, and that the Plaintiffs were well-compensated when they worked at Angie's List. These arguments are completely irrelevant to this factor. Angie's List does not dispute that its own resources exceed Plaintiffs' resources. Moreover, all of the Plaintiffs no longer work at Angie's List (many of whom were terminated by Angie's List) and many no hold jobs which would not be considered "highly compensated."

### 5. The Cost of Production Will Not Necessarily Be the Same for Either Party.

Angie's List argues that both parties have the same ability and incentive to control costs because both parties "would spend the same amount for the Salesforce records: approximately $30,000.00." This is contradicted by Angie's List's assertion that Salesforce initially charged $90,000.00 for one year of data, and Angie's List negotiated this amount down to $15,000.00. Dkt. 97-11. Also, Angie's List has produced no evidence that it paid Salesforce's $15,000.00 invoice. There is no guarantee that it would cost Plaintiffs the same amount of money that it cost Angie's List, because Salesforce may not offer this same discount if Plaintiffs are required to negotiate with them directly.

### 6. The Issue of Actual Time Worked Is the Main Area of Dispute in this Litigation.

Angie's List agrees that the issue of time worked is the "main area of dispute in this litigation," but nevertheless argues that this issue can be resolved through other records that have

been produced in discovery. This argument is not relevant to factor 6, but to factor 2, which considers "the availability of such information from other sources, or factor 7, which is addressed below. Angie's List essentially concedes that this factor weighs in Plaintiffs' favor, and its arguments against application of this factor to it are misplaced.

### 7. The Salesforce Discovery Will Assist the Parties in Resolving the Issue of Time Worked.

Angie's List argues that the Salesforce data will not resolve the issue of time worked because the parties will not be able to distinguish between manual activity logged in Salesforce and automated activity. The reality is that the Salesforce data will be cross-referenced with other data from other sources, including ID badge swipes and Interactive Intelligence telephone call records, which will assist the parties in identifying time periods when Plaintiffs worked. Angie's List relies solely on Plaintiffs' example of Erin Burgess' Salesforce logs to argue that the data is unreliable, when the Plaintiffs attached other examples of Salesforce logs to show that the Burgess example was an outlier. Most of the Salesforce logs do not identify logs of activities (whether manual or automated) running frequently or continuously, but have large chunks of time where no activity is logged at all, and at times (i.e., nights and weekends) where less activity would be expected. *See, e.g.,* Dkt. 98-3, 98-4. Angie's List ignores all evidence Plaintiffs attached to their Motion to Compel, other than Burgess, and makes no attempt to explain the discrepancy.

### 8. The Salesforce Data Will Benefit the Parties.

Angie's List again relies solely on the Erin Burgess example to argue that the data, as a whole, is "patently unreliable." Angie's List again ignores the other samples that Plaintiff submitted in support of their motion (Mike Browning and Greg Nowlin) and makes no attempt to explain why the data for these individuals is unreliable, even though, in Nowlin's case, the

11

Salesforce logs for these individuals showed only slight differences from Time Tracker. Dkt. 98-3, 98-4. Again, Plaintiffs expect there to be differences between Time Tracker and Salesforce, otherwise, the Salesforce records would not be helpful in refuting the accuracy of Time Tracker. This does not prove that the data is not reliable, but, to the contrary, corroborates Plaintiffs' claims that they worked more hours than they actually reported through Time Tracker.

### III. Conclusion.

For the foregoing reasons, and for the reasons stated in their Brief in Support of their Motion to Compel, Plaintiffs respectfully request that the Court enter an order compelling Angie's List to produce Salesforce data in response to Request for Production No. 5 from April 19, 2013, to August 31, 2014, and September 1, 2015, to the present, for the reasonable attorney's fees and costs incurred in this Motion, and for all other just and proper relief.

Respectfully submitted,

   /s/ Kathleen A. DeLaney
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
Attorneys for Plaintiff

DELANEY & DELANEY LLC
3646 N. Washington Boulevard
Indianapolis, IN 46205

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 31, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

  Amy Wilson
  Jennifer Rulon
  Neal Shah
  Frost Brown Todd LLC
  awilson@fbtlaw.com
  jrulon@fbtlaw.com
  nshah@fbtlaw.com

                */s/ Kathleen A. DeLaney*_____
                Kathleen A. DeLaney

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN 46205