UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICK WILLIAMS, *et al.*, individually and on behalf of others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) CAUSE NO. 1:16-cv-878-WTL-MJD<br>) |
| ANGIE'S LIST, INC., | )<br>) |
| Defendant. | ) |

### ENTRY ON PLAINTIFFS' RENEWED MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION

This cause is before the Court on the Plaintiffs' Renewed Motion for Conditional Certification of Collective Action and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") (Dkt. No. 75). This motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons, and to the extent, set forth below.

### I. BACKGROUND

The Plaintiffs previously sought conditional certification for a collective action of current and former Angie's List, Inc. ("Angie's List") employees working under a number of different job titles in various departments. *See* Dkt. No. 15. The Plaintiffs did not provide sufficient support for conditional certification, and certification was denied. *See* Dkt. No. 69. The Court, however, allowed the Plaintiffs the opportunity to file another motion for conditional certification, which they now present to the Court.

The Plaintiffs now seek conditional certification for a collective action of a number of current and former employees, including individuals who were Advertising Sales Consultants[1] in the Sales Origination Department from three years prior to the date of this Entry to October 1, 2015, and employees in the following positions in the Sales Origination Department from October 1, 2015, to the present: Discovery Representative, Eligibility Representative, and Senior Solutions Consultant. Dkt. No. 75 at 3. The Plaintiffs also seek to include in the collective action current and former employees who work or worked as Big Deal Representatives or E-Commerce Representatives in the Big Deal Department or in the E-Commerce Department from three years prior to the date of this Entry to the present. *Id.* This time around, the Plaintiffs also appear to seek, in the alternative, conditional certification for six possible collective sub-classes - one for current and former employees in each of the respective job titles above. *See* Dkt. No. 84 at 2 ("If the Court finds that conditional certification is not warranted for one or more positions held by [the] Plaintiffs, conditional certification should still be granted for Advertising Sales Consultants and other subclasses."). The Plaintiffs, however, have not submitted an updated proposed notice that reflects what notice they would provide to potential opt-in plaintiffs other than one that includes individuals in all six of the job titles. They "reiterate their request that the Court approve [docket number 46-3] for dissemination to the collective."[2] Dkt. No. 76 at 15.

---

[1] In their motion, the Plaintiffs state that they seek inclusion of "Advertising Sales Managers" as putative class members. However, in their reply, they clarify that this was an error and that they meant to include "Advertising Sales Consultants" as the putative class members. *See* Dkt. No. 84 at 4 n.1

[2] The Court also notes that the Plaintiffs' proposed notice refers to "E-Commerce Sales Representatives" rather than the job title "E-Commerce Representatives," for which the Plaintiffs now seek conditional certification. For purposes of this Entry, the Court will assume that these job titles represent the same position.

For ease of reference, the Court refers to current and former employees in the six job titles as "Putative Class Members."

Angie's List again objects to the appropriateness of the FLSA collective action and maintains that, in a number of ways, the Plaintiffs fail to show that they are similarly situated to the Putative Class Members or each other. Angie's List also contends that the Plaintiffs have not offered any new substantive evidence to support their position and that they continue to fail to show a common policy or plan that would have required the Putative Class Members to underreport or not report overtime hours.

## II.     FLSA COLLECTIVE ACTION

The Court now reiterates the standard it presented in its first Entry on Plaintiffs' Motion for Conditional Certification of Collective Action (Dkt. No. 69).

The FLSA provides that an action for unpaid overtime may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). When an employee brings an FLSA claim on behalf of other similarly situated employees, it is termed a "collective action." An individual can join the collective action only by consenting to become a participant. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013) (comparing requirement that FLSA collective action plaintiffs must opt in to action with procedure of opting out of class actions governed by Fed. R. Civ. P. 23); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 973 (7th Cir. 2011) (same).

Because the FLSA does not specify how collective actions are to proceed, the management of these actions has been left to the discretion of the district courts. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171-72 (1989). In this circuit, district courts generally follow a two-step inquiry when certifying collective actions.[3] In the first step, the Court must determine whether to conditionally certify an action as a collective action. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (internal citations omitted).

At the first step, the Court considers "whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. District courts in this circuit typically apply the following analysis: To be similarly situated at the first step, the Plaintiffs need make only a modest factual showing that they and potential plaintiffs were victims of a common policy or plan that violated the law. *See, e.g.*, *Bradley v. Arc of N.W. Ind., Inc.*, No. 2:14-cv-204, 2015 WL 2189284, at *2 (N.D. Ind. May 11, 2015) (citing *Allen v. The Payday Loan Store of Ind., Inc.*, No. 2:13-cv-262, 2013 WL 6237852, at *1 (N.D. Ind. Dec. 3, 2013)); *see also Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D.

---

[3] The Court acknowledges that the Seventh Circuit, referring to FLSA collective actions and Rule 23 class actions, has opined that "there isn't a good reason to have different standards for certification of the two different types of action." *Espenscheid*, 705 F.3d at 772. The Seventh Circuit in *Espenscheid* merged the standards for collective and class actions in an appeal of FLSA collective action and Rule 23 class action decertifications, presumably at the second step of the collective action inquiry. The parties here do not argue that the class action standard should apply, so the Court applies the two-step inquiry approach.

339, 345 (N.D. Ill. 2012). The Court analyzes the pleadings and any affidavits to determine whether that modest showing is made. *Knox v. Jones Group*, 208 F. Supp. 3d 954, 958 (S.D. Ind. 2016).

If the Court conditionally certifies a collective action and authorizes notice to potential participants, it proceeds to the second step in the certification process at the close of discovery and after the opt-in process is completed. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008); *Austin*, 232 F.R.D. at 605. In that step, because discovery is completed and the Court has more information on which to base its decision, a defendant can request that the Court reevaluate whether the opt-in plaintiffs are similarly situated to the named representative plaintiffs. *Jirak*, 566 F.Supp.2d at 848 (citing *Heckler v. DK Funding*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007)).

### III.  DISCUSSION

Again, this case is at the first step in the collective action certification inquiry. To meet their burden, the Plaintiffs "need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). This "modest factual showing [] is not a mere formality." *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008) (internal quotation omitted). "Once proffered, an affidavit is still subject to scrutiny." *Allen v. Payday Loan Store of Ind., Inc.*, No. 2:13-cv-262, 2013 WL 6237852, at *3 (N.D. Ind. Dec. 3, 2013). As the Court previously noted, it would be improper to accept Angie's List's evidence over conflicting evidence from the Plaintiffs because the Court is not permitted to make credibility determinations at this time. It resolves conflicts and reasonable inferences in

5

the Plaintiffs' favor. However, where evidence contradicting the Plaintiffs' claims does not require the Court to make credibility determinations, it "'will not stick its head in the sand and ignore that evidence.'" *Id.* (quoting *Hawkins v. Alorica*, 287 F.R.D. 431, 441 (S.D. Ind. 2012)) (internal quotations omitted). "[I]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a class action because the class members are not similarly situated." *Id.*

Here, the Plaintiffs incorporate by reference the evidence supporting their prior motion for collective action.[4] Dkt. No. 76 at 5 n.1. That evidence includes two deposition excerpts and five affidavits. With its current motion, the Plaintiffs submit an additional six affidavits, as well as additional deposition excerpts, one Plaintiff's answers to interrogatories, and other documents. Various deposition excerpts support the Plaintiffs' allegation that Angie's List was required to pay overtime to employees holding particular job titles and explain how job titles changed over time. The affidavits, some deposition testimony, and interrogatory responses provide evidence to support the Plaintiffs' argument that Angie's List instructed employees with various job titles to underreport hours worked.

For example, two former Big Deal Representatives stated that, when working in the Big Deal Department, they were told by their respective supervisors to report on their time records no

---

[4] Angie's List again requests that the Court apply "an intermediate scrutiny standard" to assess conditional certification in this case because, they contend, discovery in other lawsuits has taken place regarding issues in this case and that "[i]t has become a common tactic for [the] Plaintiffs to conduct depositions in related cases for the purposes of questioning deponents about issues central to this case, but then claiming no depositions have been taken in this case." Dkt. No. 81 at 14 n.6. Although additional discovery has also taken place in this case since the Court's entry on the Plaintiffs' prior conditional certification motion, the Court does not decide whether intermediate scrutiny should apply. Instead, it requires that the Plaintiffs make only a modest factual showing that they and Putative Class Members were victims of a common policy or plan that violated the law. *Bradley*, No. 2:14-cv-204, 2015 WL 2189284, at *2 (citation omitted).

more than 40 hours per week, no matter how many hours they worked.[5] Dkt. Nos. 76-6 at 2; 76-7 at 2. In addition, Plaintiff James Bryan Grant stated that, as an Advertising Sales Training Coordinator, he "encouraged Angie's List employees not to report their overtime hours worked on the instructions of Mr. Burks [Grant's immediate supervisor]."[6] Dkt No. 16-3 at 2. He also stated that when he worked as a "sales representative," he worked over 40 hours per week but was not paid overtime; his sales manager instructed him not to report overtime hours worked; and "[it] was [his] understanding that these instructions were coming from Angie's List's Sales Directors, Ed Sherman and Craig Boas." *Id.* at 3.

Affidavits by non-parties Kiel Sherwood, Darrell William Cox, Jr., and Cody Boillot evidence similar facts. Sherwood attested that "[o]n multiple occasions between February 18, 2013, and September 4, 2015, Mr. Boas, Mr. DeVries, Mr. Corbett, Mr. Hulbert, Mr. Adams, and Mr. Sherman [Sherwood's various supervisors and their superiors] instructed [him] that the Advertising Sales Consultants would not receive overtime compensation when they worked in excess of 40 hours per week, even if they needed to work more than 40 hours per week in order to hit their sales goals," Dkt. No. 46-1 at 2; that "[Mr. Sherman, Sherwood's supervisor,] told [him] to shave hours off of the total hours of the Advertising Sales Consultants in order to pay them less overtime than they were actually owed," *id.* at 3; and that "[w]hen Advertising Sales Consultants under [his] supervision reported to [him] weekly hours worked in excess of 40 hours

---

[5] Ryan Galbraith, one of the Big Deal Representatives in the Big Deal Department, also worked as an Advertising Sales Consultant and as a Big Deal Representative in the E-Commerce Department, but he did not state that his managers told him to underreport his hours worked when he was in these roles.

[6] Although Grant does not state that he trained Advertising Sales Consultants, the Court draws this reasonable inference from his affidavit.

(or 48 hours), [he] frequently asked them to change their hours worked as recorded . . . to reduce their reported hours when [he] knew that their overtime pay would not be approved," *id.*

Cox, who was an Advertising Sales Manager, did not attest that Advertising Sales Consultants were instructed to underreport hours worked. He stated that "[o]n the instructions of Mr. Davis and Mr. Adams, the Advertising Sales Consultants were expected to work as much as possible to meet their sales goals" and that "Mr. Adams and Mr. Davis were aware that this required the Advertising Sales Consultants to work more than 40 hours per week." Dkt. No. 76-1 at 2. He further attested that "[t]o [his] knowledge, the Advertising Sales Consultants on [his] sales team did not receive any overtime pay for hours worked in excess of 40 hours per week." *Id.*

Boillot, on the other hand, stated that "[d]uring [his] training as a sales manager, [he] was instructed to make sure that the sales representatives did not report hours worked over 40 per week." Dkt. No. 16-5 at 2. He further attested that his supervisor "instructed [him] that the sales representatives under [his] supervision were not permitted to report any hours worked in excess of 40 hours per week." *Id.* Boillot also stated that, as an Advertising Sales Consultant, he did not receive compensation for all overtime hours worked and was instructed not to report overtime hours worked. *Id.*

The Plaintiffs also submitted three other affidavits from former Advertising Sales Consultants stating that various supervisors instructed them to underreport hours.[7] Dkt. Nos. 76-

---

[7] In his affidavit, Desmond White also explains that he also worked as a Discovery Representative and as an Eligibility Representative. *Id.* His affidavit, however, does not state that, when he was in those positions, his managers told him to underreport his hours worked. Angie's List points this out with respect to when White was an Eligibility Representative, and the Plaintiffs do not refute this point. The Plaintiffs also provided an affidavit from Plaintiff Bob Thomas that stated that his supervisor instructed him "to turn in between 35 and 40 hours per week, no matter how many hours [he] actually worked," but he did not state that he held a

3 at 2; 76-4 at 2; 76-5 at 2. One of those affidavits also describes that one of the Plaintiffs worked as a Discovery Representative and in that position, was instructed by one supervisor to not report more than 40 hours per week, no matter how many hours he worked, Dkt. No. 76-3 at 2, and another Plaintiff explained that, when she worked as a Senior Solutions Consultant, she was instructed by a manager "that [her] time records could not reflect more than a certain number of hours per week, which varied from week to week," Dkt. No. 76-5 at 2.

Together, this evidence, taken as true, shows that a number of Advertising Sales Consultants, two former Big Deal Representatives working in the Big Deal Department, a Discovery Representative, and a Senior Solutions Consultant were each instructed by at least one supervisor not to report hours worked in excess of 40 hours per week. It also shows that some individuals in supervisory positions knew that Advertising Sales Consultants were being told to underreport their hours or were not receiving overtime compensation for all hours worked. Standing alone, the Plaintiffs' evidence provides support for finding Advertising Sales Consultants, Big Deal Representatives, Discovery Representatives, and Senior Solutions Consultants similarly situated to one another. The Plaintiffs' evidence, however, is not considered in isolation.

To rebut the Plaintiffs' factual assertions, Angie's List submitted its written policies pertaining to overtime, evidence that it paid overtime to various Plaintiffs, deposition excerpts, employment records, and several declarations from managers and Putative Class Members representative of each of the job titles included in the putative class.[8]

---

position in one of the job categories for which the Plaintiffs are seeking certification. *See* Dkt. No. 16-4 at 2. Thomas's affidavit, therefore, does not support the Plaintiffs' position that the Plaintiffs are similar to Putative Class Members.

[8] With respect to Angie's List's arguments regarding its written policies and overtime pay evidence, the Court reiterates its analysis from its Entry on the Plaintiffs' prior collective

In each of the 24 Putative Class Member affidavits submitted by Angie's List, a Putative Class Member made the following attestation: "I have never been instructed by a manager or supervisor not to record my time accurately or to not record hours worked over 40 in a workweek." *See, e.g.*, Dkt. No. 42 at 1. All but two of the Putative Class Members also said that that they "have *always* recorded [their] working hours in the time system, Time Tracker, accurately." *Id.* (emphasis added). The remaining two Putative Class Members stated that they "have recorded [their] working hours in the time system, Time Tracker, accurately." *See, e.g.*, *id.* at 17. All affiants also stated that they "had never been required or expected to work more than 40 hours in a workweek without being paid for it."[9] *See, e.g.*, *id.* at 2. The majority of Putative Class Members also stated that "[they] believe [they] have always been paid for all hours that [they] have recorded, including overtime rates for hours worked over 40 in a workweek." *See, e.g.*, *id.* at 1. Those who had not worked overtime specified that they had not. *See id.* at 25. A few others said that "[they] believe [they] have always been paid for all hours that [they] have worked and recorded" or "for all hours that [they] have worked." *See, e.g.*, *id.* at 3 and 24, respectively. Still others said that "[they] believe [they] have always been paid for all

---

action certification motion: "That Angie's List has written policies that conflict with the Plaintiffs' allegations does not determine whether the Plaintiffs have viable overtime claims. Moreover, evidence that Angie's List has paid overtime to the Plaintiffs does not mean that additional overtime is not owed or that there was not a common policy or plan to reduce or prevent paying employees for overtime worked." Dkt. No. 69 at 8 n.6. *See also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 371 (7th Cir. 2015) (summarizing district court's analysis in which it concluded that evidence that employer had written overtime policy and had paid overtime to employees "would not negate the evidence in the record that [defendant's] management had denied compensation for overtime work on a number of occasions").

[9] Some of the affidavits say, "I have never been required or expected to work more than 40 hours in week [sic] without being paid for it." *See id.* at 1. The Court treats this construction the same as it treats the other statement since the sentiment is the same.

hours that [they] have worked [recorded]." *See, e.g.*, *id.* at 19 (brackets around "recorded" in original).

The Plaintiffs argue that the statement Putative Class Members made that they have always been paid for all hours that they have recorded, rather than worked, "does not help Angie's List, because [the] Plaintiffs allege that their hours were incorrectly recorded, and they did not receive compensation for all hours worked." Dkt. No. 84 at 19. However, because the Putative Class Members also assert that they "have always recorded [their] working hours in the time system, Time Tracker, accurately," it is reasonable to infer that when they say that they have been paid for all hours recorded, it is no different from saying that they have been paid for all hours worked.

The Plaintiffs also argue that Angie's List only submitted declarations from E-Commerce Department and Big Deal Department employees who did not work or "very rarely" worked overtime and that "[t]he fact that certain employees at Angie's List believe they are not owed overtime compensation provides no justification for denying an opportunity for others to opt in as collective action members." Dkt. No. 84 at 19. These declarants, however, also stated that they were not instructed to underreport hours worked and were not required or expected to work more than 40 hours without being paid. Even if they never worked overtime hours, their declarations nonetheless support Angie's List's position that there was no common policy or plan requiring the Plaintiffs and Putative Class Members to underreport hours worked.[10]

---

[10] In addition, one declaration submitted by a former E-Commerce Representative further undermines the Plaintiffs' argument. Joseph Davis declared that he was currently an Eligibility Representative, but that he had also worked "in the position of E-Commerce Rep."; had always been paid for all hours that he recorded, including overtime rates for hours worked over 40 in a workweek; and had accurately reported his working hours in Time Tracker. Dkt. No. 42 at 15-16. He did not declare that he did not work overtime or "very rarely" worked overtime.

The Plaintiffs provided affidavits from former employees across the subclasses of job categories proposed for the collective action. Angie's List also provided affidavits from employees in each subclass. Angie's List's evidence does not contradict the Plaintiffs' evidence in a way that would lead the Court to resolve a conflict in the Plaintiffs' favor. Instead, it is possible for the facts in both the Plaintiffs' affidavits and Angie's List's affidavits to be true. For example, the Plaintiffs who attested to being told by managers to report no more than 40 hours of work per week, regardless of the number of hours worked, may have been told to do so. Similarly, the Putative Class Members who attested that they were never instructed by any manager or supervisor to record time inaccurately or were never required or expected to work overtime without being paid may also be telling the truth. If the Court accepts both sets of evidence as true, it cannot conclude that the Putative Class Members and the Plaintiffs were victims of a common policy or plan. The Plaintiffs' evidence, taken as true, supports a finding that some Advertising Sales Consultants, Big Deal Representatives in the Big Deal Department, Discovery Representatives, and a Senior Solutions Consultant were told by some managers not to report more than 40 hours per week, regardless of the number of hours those employees actually worked. It does not support a finding that Angie's List instructed all Putative Class Members to not report overtime hours or to underreport overtime hours in order to not pay them for all overtime that they worked; nor does it support a finding that any other common plan or policy applied to avoid paying all Putative Class Members for all hours worked. The Plaintiffs may have individual claims against Angie's List, but they have not provided sufficient support for conditional certification of the proposed collective action or any subclass thereof.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Plaintiffs have not made the showing necessary for conditional certification of an FLSA collective action. Accordingly, the Court **DENIES** the Plaintiffs' Renewed Motion for Conditional Certification of Collective Action and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Dkt. No. 75). The named Plaintiffs can proceed with their individual claims against Angie's List.

SO ORDERED: 4/27/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.